T.C. Memo. 2010-280

UNITED STATES TAX COURT

THOMAS M. GILLUM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16110-07L.               Filed December 22, 2010.

<u>Kenneth R. Boiarsky</u>, for petitioner.

<u>Elizabeth Downs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Pursuant to sections 6320(c) and 6330(d), petitioner seeks judicial review of respondent's determination sustaining the filing of a Federal tax lien with respect to petitioner's Federal income tax liabilities for 1998, 2000, 2001, and 2002, and sustaining a proposed levy to collect petitioner's Federal income tax liabilities for each of the years 1996 through

2002.[1]  Petitioner also seeks judicial review of various letters that respondent allegedly sent to various entities, as petitioner's nominees or alter egos, denying them collection due process hearings with respect to respondent's filing of Federal tax liens.

FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate by this reference.  When he filed his petition, petitioner resided in Arkansas.

Petitioner is a veterinarian.  He operates his practice under the business name Cloverdale Animal Hospital, LLC (Cloverdale).

In 2004 petitioner was criminally prosecuted for willful failure to file tax returns, in violation of section 7203, for taxable years 1996 through 2002.  In December 2005 petitioner pleaded guilty to one count of criminal failure to file a Federal income tax return for 2000.  His criminal plea agreement provided, inter alia, for entry of an order of mandatory restitution under 18 U.S.C. section 3663A for "the full amount of the taxes due and owing for all prosecution years."  The plea agreement stated:  "At this time, the United States and the defendant agree that the amount of restitution payable by the

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code.  All figures are rounded to the nearest dollar.

defendant is $416,210."  The plea agreement also stated:  "Except to the extent otherwise expressly specified herein, this Agreement does not bar or compromise any civil or administrative claim pending or that may be made against the defendant, including but not limited to tax matters."  The plea agreement stated further:  "This Agreement is binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant.  It does not bind * * * any other federal, state or local prosecuting, administrative, or regulatory authority."

In its judgment filed December 12, 2005, the District Court reduced the amount of restitution, labeled "criminal monetary penalties", to $246,226.[2]  The District Court also ordered a schedule of payments, with a lump sum of $25 due immediately and the balance due in monthly installments equaling 10 percent of petitioner's monthly gross income.[3]

While the criminal proceedings were pending against petitioner, on August 13, 2004, he filed amended returns for taxable years 1996, 1997, and 1998, and on September 7, 2004, he

---

[2]This amount corresponded to the amount stated in the plea agreement as representing petitioner's total tax liability for the years 1999 through 2001.  The record does not conclusively show why the District Court reduced the restitution in this manner.

[3]The record does not establish whether petitioner has complied with the restitution order.

filed an amended return for taxable year 1999.[4]  Also on September 7, 2004, petitioner filed delinquent returns for taxable years 2000, 2001, and 2002.

On October 25, 2004, respondent assessed the taxes that petitioner had reported on his delinquent returns for 2000, 2001, and 2002.  On March 14, 2005, respondent assessed the tax that petitioner had reported on his amended 1998 return, and on June 26, 2006, respondent assessed the taxes that petitioner had reported on his amended returns for 1996, 1997, and 1999.  In each instance, respondent also assessed applicable additions to tax and interest.

On October 18, 2006, respondent sent petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (the lien notice), with respect to petitioner's taxable years 1998, 2000, 2001, 2002, and 2003.  On October 26, 2006, respondent sent petitioner Letter 1058, Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (the levy notice), with respect to petitioner's taxable years 1996 through 2003.  The levy notice indicated that as of November

---

[4]Insofar as the record shows, these were the first returns that petitioner filed for these years.  Apparently, they were characterized as "amended" returns because respondent had previously prepared substitutes for returns for petitioner's taxable years 1996 through 1999.

25, 2006, petitioner would owe $839,856 of tax, penalties, and interest for these years.[5]

On November 21, 2006, petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing, indicating that he disagreed with both the lien notice and the levy notice.[6] The request covered petitioner's tax years 1996 through 2002 but not 2003. In his request petitioner asserted that the criminal plea agreement and judgment reflected the full settlement of his tax liabilities for 1996 through 2002. He asserted that "payment on these years is exclusively covered under an agreed court order for restitution", that he was making payments to the IRS for these tax years under this agreement, and that unless he failed to meet his obligations under the court order, the IRS must "cease and desist from further collection activity." Petitioner did not propose any collection alternative in his hearing request.

On October 26, 2006, in anticipation of submitting a request for a hearing, petitioner submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed

---

[5]The notice indicates that $47,567 of this amount relates to petitioner's 2003 taxable year.

[6]After petitioner submitted his request for a collection due process (CDP) hearing, on Dec. 8, 2006, respondent issued to petitioner a notice of deficiency with respect to petitioner's taxable years 1998 through 2002. The parties agree that the deficiencies determined in the notice are not at issue in this case.

Individuals, with respect to himself, and on October 27, 2006, petitioner submitted Form 433-B, Collection Information Statement for Businesses, with respect to Cloverdale. On these forms petitioner failed to provide complete information. For example, on Form 433-A he did not provide requested bank account numbers and routing information, detailed credit card information, the estimated value of three vehicles, or required information with respect to his personal assets and living expenses. In response to a question asking whether he had transferred any assets for less than their actual value within the past 10 years, he checked "No" but then wrote "Possible". The form required several attachments, including proof of current expenses, which petitioner failed to provide.

On Form 433-B petitioner did not provide detailed information with respect to Cloverdale's accounts receivable, business assets, bank accounts, or available credit. In response to a question requesting detailed information with respect to Cloverdale's income and expenses, petitioner replied "see statement attached", but did not attach any such statement. The form also required several other attachments, which petitioner failed to provide.

On May 15, 2007, the settlement officer held the first of three telephone conferences with petitioner's representative. In this conference the settlement officer opined that neither the

criminal plea agreement nor the judgment barred the IRS from any civil or administrative actions with respect to petitioner's civil tax liabilities and did not compromise those liabilities. The settlement officer asked the representative whether he wished to propose any collection alternatives. The representative proposed as a collection alternative that the IRS limit its collection action to the terms of the plea agreement and judgment. They agreed to have a second conference.

Before the second conference the settlement officer reviewed the collection administrative case file, which included, among other things: (1) A memorandum, dated February 22, 2007, from Revenue Officer Robert Brown to IRS district counsel in Oklahoma City, Oklahoma, requesting approval to file alter ego and nominee liens and levies against several entities created by petitioner (the request); (2) a memorandum from respondent's associate area counsel in Oklahoma City responding to the request (the memorandum); and (3) several diagrams detailing petitioner's alleged alter ego and nominee activities.[7]

The request indicated on the basis of findings contained therein that, notwithstanding his prior criminal conviction, petitioner was still using various sham trusts, nominees, and alter egos to shield assets and income from taxation. More particularly, the request included findings that petitioner had

---

[7]The record does not reveal who prepared these diagrams.

funneled unreported cash payments from Cloverdale to grantor trusts and other entities to pay his and his family's personal expenses, including cable TV bills, college tuition, life insurance premiums, vacation expenses, car payments, and hardwood flooring for petitioner's residence. The request concluded that petitioner had created certain nominee entities, including a trust known as Lestat Ops, to hold personal assets and real estate for the purpose of placing them out of the reach of creditors, mainly the Government.[8]

The memorandum indicates that "nominee" refers to an entity or person to whom a taxpayer has transferred property in an attempt to conceal it. According to the memorandum, a Federal tax lien encumbers such property because although a third party may have legal title, the taxpayer actually owns the property and enjoys its full use and benefit. The memorandum also indicates that an alter ego generally involves a sham corporation or other entity used by the taxpayer as an instrumentality to avoid his or her own legal obligations. In the memorandum respondent's associate area counsel approved nominee liens against three trusts created by petitioner, including Lestat Ops, as well as against petitioner's wife, and approved alter ego liens against

---

[8]The request describes Lestat Ops as a trust which holds the real estate upon which petitioner's veterinary clinic is located and indicates that the trust's beneficiaries are petitioner's children.

Cloverdale, another limited liability company, and two other trusts that petitioner had created.

Cloverdale and Lestat Ops received from the IRS Letters 3172, dated May 15, 2007, providing notice of the filing of Federal tax liens and advising of the right to a collection due process (CDP) hearing. By letters dated June 20, 2007, requests for CDP hearings with respect to these two entities were timely submitted. Shortly thereafter, Cloverdale and Lestat Ops received letters from Revenue Officer Robert Brown, dated June 25, 2007, acknowledging receipt of the hearing requests but advising that CDP rights were not available to these entities because petitioner previously had been afforded CDP rights with respect to the same tax periods listed in the lien notices. The letters indicated, however, that the entities were entitled to a "Collection Appeal" with the revenue officer's manager.

On May 21, 2007, the settlement officer held a second telephone conference with petitioner's representative. Petitioner's representative continued to maintain, as a collection alternative to the proposed levy, that collection should be limited to the amount specified in the criminal plea agreement and judgment. The settlement officer indicated that he had reviewed financial statements and related information in the collection administrative file and concluded that the financial statements did not provide full disclosure of petitioner's income

and assets. Consequently, he was unable to recommend acceptance of petitioner's proposed collection alternative. Petitioner's representative requested details of the alleged nondisclosure. The settlement officer declined to discuss the details at that time, indicating that he would research the matter. They agreed to have another conference.

After seeking advice of IRS counsel, on May 24, 2007, the settlement officer held the third and final telephone conference with petitioner's representative. The settlement officer asserted that petitioner had failed to completely disclose his income, expenses, and assets, making it impossible to adequately evaluate his ability to pay. Without specifically referencing the request or memorandum that he had reviewed, the settlement officer asserted that petitioner had diverted income into various entities and paid personal expenses through these entities for no apparent legitimate business reason. He also asserted that petitioner had attempted to place numerous assets beyond respondent's reach in various nominee or alter ego entities. According to the settlement officer's case activity record, petitioner's representative expressed surprise at this information, indicated that petitioner apparently had not disclosed all the facts to him, and stated that he understood why the settlement officer could not consider a collection alternative. After another discussion about the effect of the

criminal plea agreement and judgment, the settlement officer advised the representative that the proposed collection actions would be sustained.

On June 15, 2007, respondent's Office of Appeals mailed petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (the determination), sustaining the Federal tax lien filing and the proposed levy. With respect to petitioner's underlying liability the determination stated:

> In this case the taxpayer agreed to pay restitution for the full amount of the taxes due for all prosecution years (1996 through 2002), but the judge, who is not bound by the plea agreement, subsequently ordered payment of restitution in the amount that is equivalent of the tax liability for only one count of the total criminal case. The restitution amount relates to the tax liability, but it is not the equivalent of the tax liability. It is the determination of Appeals that neither the plea agreement nor the court judgment represent a settlement or compromise of the tax liability, and do not bar IRS from taking additional collection actions.

The determination also rejected petitioner's proposed collection alternative of limiting collection to the terms of the criminal plea agreement and judgment, stating:

> Appeals has determined from this review that the taxpayer has not accurately reported income and expenses, which make it impossible to determine his true ability to pay the tax liability. The taxpayer has done this by diverting income through various entities (trusts, limited liability companies, and his wife) and paying personal expenses through these entities for no apparent reason other than to avoid taxes and the collection of taxes. He has also placed assets beyond the reach of IRS by purchasing them in

the name of various entities he controls or transferring them to these entities. It is clear that the taxpayer maintains full use and benefits of these assets, which include real estate, vehicles, watercraft, and all-terrain vehicles. Because these assets and any encumbrances against these assets have not been disclosed, Appeals is not able to determine their net equity and collection potential. For these reasons Appeals cannot accept the only collection alternative proposed by the taxpayer's representative.

The determination also concluded that the proposed tax lien filing and levy action properly balanced the need for efficient collection of taxes with the concern that collection action be no more intrusive than necessary.

Petitioner timely petitioned this Court for judicial review of this determination. The petition also seeks judicial review of letters which petitioner asserts respondent mailed on June 25, 2007, to four entities created by petitioner, including Cloverdale and Lestat Ops, denying them the opportunity for CDP hearings with respect to the filing of tax liens against them as petitioner's alleged nominees, transferees, or alter egos.[9]

OPINION

I.   Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and property rights of a person who is liable for

_____

[9]The record contains the June 25, 2007, letters, described _supra_, from Revenue Officer Robert Brown to Cloverdale and Lestat Ops. The petition seems to assert that two other entities, Piraeus Group and MRMLBS, received similar letters also dated June 25, 2007. The record does not contain copies of any such letters.

and fails to pay tax after demand for payment has been made. The lien arises when assessment is made and continues until the liability is paid or becomes unenforceable by lapse of time. Sec. 6322. For the lien to be valid against certain third parties, the Secretary must file a notice of Federal tax lien; within 5 business days thereafter, the Secretary must provide written notice to the taxpayer. Secs. 6320(a), 6323(a). The taxpayer then has 30 days to request an administrative hearing before an Appeals officer. Sec. 6320(a)(3)(B), (b)(1); sec. 301.6320-1(c)(1), Proced. & Admin. Regs. To the extent practicable, a hearing requested under section 6320 is to be held in conjunction with a related hearing requested under section 6330. Sec. 6320(b)(4).

Section 6330 requires the Secretary to furnish a person notice and opportunity for a hearing before levying on the person's property. At the hearing, the person may raise any relevant issue relating to the unpaid tax or proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. The person may challenge the underlying tax liability if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604 (2000). After receiving a notice of determination, the person may seek judicial

review in this Court.  Sec. 6330(d)(1); Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019.  If the validity of the underlying tax liability is properly at issue, we review that issue de novo.  Sego v. Commissioner, supra.  Other issues we review for abuse of discretion.  Id.

II.  Petitioner's Challenge to His Underlying Liabilities

Petitioner contends that respondent erred in sustaining the lien and levy notices because they contravene the criminal plea agreement and judgment.  Petitioner's contention represents in part a challenge to his underlying liabilities for 1996 through 2002.[10]  Respondent concedes that petitioner is entitled to make such a challenge but contends that it is without merit.

Respondent assessed petitioner's taxes for the years in question on the basis of the amounts petitioner self-reported on his amended or delinquent returns for these years.  Petitioner does not contend that he incorrectly reported his tax liabilities on these returns.  Rather, he contends that his aggregate tax liability for 1996 through 2002 is limited to the $246,226 of restitution ordered in the criminal judgment.  We disagree.

Pursuant to 18 U.S.C. section 3663(a) (2006), a District Court may order restitution to the victim of a criminal offense.

---

[10]Petitioner has stipulated that his 2003 liability (which was encompassed by the lien and levy notices but was not included either in petitioner's request for a CDP hearing or in respondent's determinations) is not at issue in this case.

In some circumstances, as in petitioner's criminal case, restitution is mandatory.  See 18 U.S.C. sec. 3663A (2006).  An order to pay restitution is a criminal penalty rather than a civil penalty.  Creel v. Commissioner, 419 F.3d 1135, 1140 (11th Cir. 2005).  Although restitution is based upon an estimation of civil tax liability, it is not a determination of civil tax liability and generally does not bar the Commissioner from assessing a greater amount of civil tax liability.  See Morse v. Commissioner, 419 F.3d 829, 833-835 (8th Cir. 2005), affg. T.C. Memo. 2003-332; Hickman v. Commissioner, 183 F.3d 535, 537-538 (6th Cir. 1999), affg. T.C. Memo. 1997-566; M.J. Wood Associates, Inc. v. Commissioner, T.C. Memo. 1998-375.  In fact, the restitution statute expressly contemplates that a civil claim may be brought after the criminal prosecution by providing that the amount paid under a restitution order "shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in * * * any Federal civil proceeding".  18 U.S.C. 3664(j)(2) (2006).[11]

---

[11]Conversely, payments made pursuant to restitution orders are applied against tax liabilities.  See United States v. Clayton, 613 F.3d 592 (5th Cir. 2010); United States v. Tucker, 217 F.3d 960, 962 (8th Cir. 2000); M.J. Wood Associates, Inc. v. Commissioner, T.C. Memo. 1998-375.  The record is silent as to what amounts, if any, of restitution petitioner has paid.  On brief respondent states that petitioner's "restitution payments will ultimately be applied to his civil tax liability for the taxable year 2000, and if in excess of that liability to other years".  Petitioner, who filed no reply brief, has not challenged

(continued...)

Petitioner relies upon <u>Creel v. Commissioner</u>, <u>supra</u>, in support of his contention that respondent's proposed collection actions contravene the restitution order.  Petitioner's reliance on <u>Creel</u> is misplaced.  In <u>Creel</u>, the Court of Appeals found that a restitution order, which specifically encompassed "'any interest and penalties which may be imposed by the Internal Revenue Service'", included the civil penalties that the Commissioner later sought to recover in a civil suit.  <u>Id.</u> at 1140.  Furthermore, at the time of the civil suit the taxpayer in <u>Creel</u> had fully settled the ordered restitution, and the U.S. attorney had filed a satisfaction of judgment and had also recorded a cancellation and release that of the judgment lien.  <u>Id.</u>  Taking into account these unusual circumstances, the Court of Appeals held that the Government had discharged the taxpayer's civil tax liabilities as part of the criminal case.

By contrast, petitioner's plea agreement expressly states that it "does not bar or compromise any civil or administrative claim pending or that may be made against the defendant, including but not limited to tax matters."  Further, the plea agreement states that it is "binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant" and "does not bind * * * any other federal, state or

---

[11](...continued)
this statement or the appropriateness of this treatment. Consequently, we give this issue no further consideration.

local prosecuting, administrative or regulatory authority." The criminal judgment refers to the restitution payments as "criminal monetary penalties" and makes no mention of civil liabilities or penalties. Furthermore, there is no evidence that petitioner has satisfied his criminal restitution order or received any discharge.

We conclude and hold that petitioner's criminal plea agreement and judgment ordering restitution did not discharge, and do not limit respondent's assessment and collection of, petitioner's civil tax liabilities for his taxable years 1996 through 2002.

III. Petitioner's Proposed Collection Alternative

We review the settlement officer's denial of a collection alternative for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604 (2000). The U.S. Court of Appeals for the Eighth Circuit, to which any appeal of this case would lie, describes the abuse of discretion standard as "markedly deferential: if the amount of tax owed is not in dispute, courts may disturb the administrative decision only if it constituted 'a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS.'" Fifty Below Sales & Mktg., Inc. v. United States, 497 F.3d 828, 830 (8th Cir. 2007) (quoting Robinette v. Commissioner, 439 F.3d 455, 459 (8th Cir. 2006), revg. 123 T.C. 85 (2004)).

The only collection alternative that petitioner has proposed is to limit his 1996 through 2002 liability to $246,226; i.e., the amount of restitution ordered by the District Court in the criminal proceeding.  Insofar as this "collection alternative" represents petitioner's reassertion of his challenge to his underlying civil tax liabilities, it was properly rejected for the reasons just discussed.  And for essentially those same reasons, the restitution order does not require respondent to adhere to the restitution payment schedule set forth therein to collect petitioner's civil tax liabilities.

Insofar as petitioner's "collection alternative" might be viewed as representing, in effect, an offer-in-compromise, the settlement officer did not abuse his discretion in rejecting it. The regulations set forth three grounds for compromising a liability:  (1) Doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  As just discussed, petitioner has put forward no legitimate issue regarding his civil tax liabilities.  Nor has he expressly argued that his collection alternative was for the promotion of

effective tax administration.[12]  That leaves doubt as to
collectibility.

For purposes of evaluating an offer-in-compromise, doubt as
to collectibility exists "where the taxpayer's assets and income
are less than the full amount of the liability."  Sec. 301.7122-
1(b)(2), Proced. & Admin. Regs.  Because he submitted incomplete
Forms 433-A and 433-B, petitioner failed to provide the
settlement officer all financial information necessary to
evaluate his ability to fully pay his civil tax liabilities.  For
that reason, if for no other, the settlement officer did not
abuse his discretion in rejecting any collection alternative
based on doubt as to collectibility.  See, e.g., Kansky v.
Commissioner, T.C. Memo. 2007-40; Criner v. Commissioner, T.C.
Memo. 2003-328.

## IV.  Fair Hearing

Petitioner complains that he was denied a fair collection
hearing because the settlement officer did not disclose to his

---

[12]The Commissioner may compromise a tax liability for
promotion of effective tax administration if:  (1) Collection in
full could be achieved but would cause economic hardship; or (2)
if there are compelling public policy or equity considerations
identified by the taxpayer.  Sec. 301.7122-1(b)(3), Proced. &
Admin. Regs.; see Speltz v. Commissioner, 124 T.C. 165, 172-173
(2005), affd. 454 F.3d 782 (8th Cir. 2006).  Petitioner has not
argued and the record does not suggest that he meets these
conditions.  Nor does the record suggest that petitioner raised
these issues at the collection hearing; accordingly, he is not
entitled to raise them in this proceeding.  See Giamelli v.
Commissioner, 129 T.C. 107, 114 (2007).

representative all the information in the collection administrative file which the settlement officer had reviewed in reaching his conclusions.[13]

Collection hearings are conducted in an informal setting that does not include the right to discovery. See Katz v. Commissioner, 115 T.C. 329 (2000), Davis v. Commissioner, 115 T.C. 35, 41-42 (2000). The information that the settlement officer reviewed related to matters that should have been within petitioner's knowledge, and the settlement officer did in fact share with petitioner's representative the nature of his concerns

---

[13]The materials which the settlement officer reviewed included Revenue Officer Brown's request to IRS district counsel to file alter ego and nominee liens and levies and district counsel's memorandum approving the filing of alter ego and nominee liens. Petitioner contends that these materials were not included in the administrative file. The parties have stipulated, however, that the stipulated exhibits, which include the materials in question, "constitute the complete administrative record in this case". Petitioner has not raised, and consequently we do not consider, any issue as to whether the settlement officer's review of such materials entailed any improper ex parte communication.

Over respondents' objection, petitioner called the settlement officer as a witness at trial, attempting to show that the settlement officer failed to adequately explain the reasons for his determination. Cf. Robinette v. Commissioner, 439 F.3d 455, 461 (8th Cir. 2006) (indicating that judicial review based on the administrative record may permit "the receipt of testimony or evidence explaining the reasoning behind the agency's decision"), revg. 123 T.C. 85 (2004). The settlement officer's testimony, however, had little probative value or relevancy. On brief respondent renews his objection to the settlement officer's testimony. Because we have not relied upon this testimony in our analysis or holdings, it is unnecessary to address further respondent's objection.

about petitioner's nondisclosure of income and assets.[14]  More
fundamentally, as just discussed, petitioner's failure to provide
the settlement officer all required financial information was
reason enough for the settlement officer to reject his collection
alternative.  We do not see that the settlement officer's
disclosure or nondisclosure of the materials in question had any
significant bearing on the fairness or outcome of petitioner's
hearing.

V.   Denial of CDP Hearings for Nominees and Alter Egos

Petitioner asserts that certain entities, including
Cloverdale and Lestat Ops, received nominee or alter ego lien
notices but were improperly denied CDP hearings.[15]  According to
the regulations, nominees and alter egos holding property for a
taxpayer are not entitled to CDP hearings.  Sec. 301.6330-
1(b)(2), Q&A-B5, Proced. & Admin. Regs.  In any event, we cannot
enter a decision affecting the entities in question because they

------

[14]Shortly before the second telephone conference between
petitioner's representative and the settlement officer on May 21,
2007, the IRS had mailed to Cloverdale and Lestat Ops (and,
according to petitioner's allegations, at least two other
entities) nominee notices of Federal tax lien filing.

[15]Respondent issued the nominee notices of Federal tax lien
filing for Cloverdale and Lestat Ops (and, according to
petitioner's allegations, for at least two other entities) on May
15, 2007, months after respondent had issued petitioner the
notice of Federal tax lien filing upon which this case is
predicated.

are not parties to this proceeding.  See <u>Dalton v. Commissioner</u>, 135 T.C. __, __ (2010) (slip op. at 15).

V.    <u>Conclusion</u>

We sustain respondent's determinations sustaining the filing of the notice of Federal tax lien and the proposed levy.

<u>Decision will be entered</u>

<u>for respondent</u>.