# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1664

_____

| | | |
|---|---|---|
| Thomas M. Gillum, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| | * | Tax Court. |
| v. | * | |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | | |

_____

Submitted: November 15, 2011
Filed: April 11, 2012

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Thomas M. Gillum sought judicial review of the Commissioner of Internal Revenue's notice of determination sustaining a proposed levy to collect Gillum's delinquent income tax liabilities for 1996–2002 and a tax-lien filing for 1998 and 2000–2002 tax liabilities. Gillum also sought review of the Commissioner's denial of collection due process (CDP) hearings to his purported nominees and alter egos.

Following trial, the tax court[1] upheld the Commissioner's determinations sustaining the filing of the notice of the federal tax lien and proposed levy. Additionally, the tax court held that it could not enter a decision affecting Gillum's purported nominees and alter egos because they were not parties to the proceeding. Gillum appeals, arguing that he was denied a fair CDP hearing because the Internal Revenue Service (IRS) settlement officer relied on information that was not contained in the administrative record in making his determination. He additionally argues that his purported nominees and alter egos were entitled to a CDP hearing. We affirm.

## I. *Background*[2]
### A. *Criminal Prosecution*

Gillum is a veterinarian who operates Cloverdale Animal Hospital, LLC ("Cloverdale"). He was prosecuted in 2004 for failure to file federal income tax returns for 1996–2002. In 2005, Gillum entered into a plea agreement with the United States Attorney for the Eastern District of Arkansas in which he pleaded guilty to one count of criminal failure to file a federal income tax return for 2000. In the plea agreement, Gillum agreed to entry of an order of mandatory restitution under 18 U.S.C. § 3663A for "the full amount of the taxes due and owing for all prosecution years." The plea agreement provided that "[a]t this time, the United States and the defendant agree that the amount of restitution payable by the defendant is $416,210." The plea agreement did "not bar or compromise any civil or administrative claim pending or that may be made against the defendant, including but not limited to tax matters." Furthermore, it was "binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant. It d[id] not bind . . . any other federal, state or local prosecuting, administrative, or regulatory authority."

---

[1]The Honorable Michael B. Thornton, United States Tax Court Judge.

[2]The factual background in this case is extensive and complicated by Gillum's criminal prosecution, the civil-collection process for Gillum's delinquent taxes, and the substantial administrative record.

-2-

In a judgment filed December 12, 2005, the district court sentenced Gillum to five years of probation and ordered him to "pay the total criminal monetary penalties" of $246,226 in "[r]estitution."[3] The district court also ordered Gillum to pay the $246,266 in monthly payments equal to ten percent of his monthly gross income, beginning 30 days after the date of the judgment.

While the criminal proceedings were pending, Gillum filed tax returns for 1996–2002. Thereafter, the IRS assessed the taxes that Gillum had reported on his delinquent returns for those years. In each instance, the IRS added associated tax and interest. The IRS sent notice and demand for payment to Gillum on the date of each assessment. After Gillum failed to pay, the IRS advised him on October 6, 2006, that it was going to file a notice of federal tax lien. Gillum did not request administrative review of the lien-filing at that time.

Notices of federal lien dated October 13, 2006, were recorded in Montgomery County and Pulaski County, Arkansas, on October 23, 2006, and October 24, 2006, respectively, thereby securing Gillum's delinquencies for 1998 and 2000–2003. On October 18, 2006, the IRS sent Gillum a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320" for 1998 and 2000–2003. On October 26, 2006, the IRS sent Gillum a "Final Notice[:] Notice of Intent to Levy and Notice of Your Right to a Hearing" under 26 U.S.C. § 6330 to collect Gillum's unpaid tax liabilities for 1996–2003.

On October 26 and 27, 2006, Gillum sent a "Form 433-A," entitled "Collection Information Statement for Wage Earners and Self-Employed Individuals," and a

_____

[3]As the tax court explained, "[t]his amount corresponded to the amount stated in the plea agreement as representing [Gillum's] total tax liability for the years 1999 through 2001." *Gillum v. Comm'r*, 100 T.C.M. (CCH) 562, 2010 WL 5393884, at *1 n.2 (2010). The record contains no explanation regarding "why the [d]istrict [c]ourt reduced the restitution in this manner." *Id*.

"Form 433-B," entitled "Collection Information Statement for Businesses," to the IRS. Gillum withheld documentation that he was required to submit with the forms. He failed to provide the account numbers for his personal bank accounts, which were held in the name of "TMG Revocable Living Trust," or for his personal credit card, which was in the name of "Cloverdale Animal." On Form 433-A, Gillum stated that there were no judgments against him and that he was not the beneficiary of any trust. He also stated that his monthly living expenses totaled $6,532.75, but he failed to categorize the expenses. He also did not give the estimated value of three vehicles in his possession or other required information about his personal assets. In response to the question of whether he had transferred any assets for less than their actual value in the past ten years, Gillum checked the box for "No" and wrote "Possible" next to the box for "Yes." On Form 433-B, Gillum omitted bank and credit card account numbers and did not provide the required details about accounts receivable, business assets, available credit, or monthly income and expenses. He stated that it was "possible" that business income would increase.

## B. *IRS Appeals Office CDP Hearing*

On November 21, 2006, Gillum timely submitted his "Request for a Collection Due Process Hearing" under 26 U.S.C. §§ 6320 and 6330, indicating his disagreement with both the lien notice and the levy notice.[4] In his request, Gillum argued that his criminal plea agreement and judgment reflected his "tax liability for years 1996 through 2002" "and that all further attempts by the IRS to collect on these years are invalid." He requested "that the IRS cease and desist from any further collection efforts regarding tax years 1996 through 2002 due to the fact that payment on these years is exclusively covered under an agreed court order for restitution to the IRS."

---

[4]"After [Gillum] submitted his request for a collection due process (CDP) hearing, on Dec. 8, 2006, [the IRS] issued to [Gillum] a notice of deficiency with respect to [Gillum's] taxable years 1998 through 2002. The parties agree that the deficiencies determined in the notice are not at issue in this case." *Gillum*, 2010 WL 5393884, at *2 n.6.

According to Gillum, he was "making payments to the IRS for these tax years under this agreement, and, unless [he] fail[ed] to meet his obligations under that agreed court order, the IRS must cease and desist from further collection activity." Gillum did not propose any collection alternatives in his hearing request.

On December 14, 2006, the IRS Appeals Office sent Gillum a letter acknowledging its receipt of his CDP hearing request and informing him that IRS settlement officer David P. Schroeder would conduct the hearing. Gillum hired attorney Kenneth Boiarsky as his CDP representative. On April 26, 2007, Schroeder sent a letter to Gillum, with a copy to Boiarsky, scheduling a telephone hearing on May 15, 2007. Schroeder stated in the letter that he "d[id] not recall any prohibited previous involvement with [the] tax periods [at issue]" but that if Gillum believed that Schroeder had prior involvement, then Gillum needed to "notify [Schroeder] immediately." Schroeder also listed "nonfrivolous issues" for discussion at the CDP hearing, including "[c]ollection alternatives to levy such as full payment of the liability, installment agreement, offer in compromise or temporary suspension of collection action if the action imposes a hardship condition." Schroeder stated that even though these collection options "may not be considered an 'alternative' to a notice of lien filing," they could still "be discussed at a lien hearing." Schroeder informed Gillum that he could request a determination as to whether "the notice of lien filing was appropriate and if [Gillum] qualif[ied] for a lien withdrawal or other lien options, such as subordination." Schroeder instructed Gillum to send Schroeder "any information you want me to consider in your hearing so that I receive it within 14 days from the date of this letter."[5]

_____

[5]Additionally, Schroeder explained that Gillum's request for a hearing was timely with respect to the proposed levy for 1996–2002 and the tax-lien filing for 1998 and 2000–2002, but that, at the time of the hearing request, a notice of tax lien had not been filed for 1996, 1997, or 1999.

Gillum did not object to Schroeder conducting the CDP hearing, and on May 15, 2007, Schroeder held the first of three telephone conferences with Boiarsky, Gillum's representative.[6] During that telephone conference, Schroeder opined that "neither the judgment nor the plea agreement bars IRS from any civil or administrative actions related to the full tax liability, nor do [the plea agreement and judgment] compromise the tax liability." Schroeder asked Boiarsky whether he wanted the IRS Appeals Office "to consider collection alternatives." Boiarsky responded that, although he was not "conceding his position regarding his understanding of the agreement and judgment," he did "want collection alternatives considered." Boiarsky additionally "stated that [Gillum] is paying everything he makes to [the] IRS, and he proposed that [the] IRS limit its collection to the terms of the plea agreement and court judgment." Schroeder replied that he would "retrieve the collection admin[istrative] file, which contains current financial info[rmation], review it, and call him back [on May 21, 2007, at] 2PM to conclude [the] hearing."

Following the first telephone conference, Schroeder "[w]ent to collection" and "[m]et with [a] R/O [(revenue officer)]." Schroeder gave the revenue officer an "ex-parte limitation warning." The revenue officer "had several files on [Gillum]" and "gave [Schroeder the] file with [Gillum's] financial statement and related documents." Schroeder then "[r]eviewed [the] file containing [Form] 433-A, [Form] 433-B, [the] request for opinion to file nominee and alter ego liens, and counsel's approval memo on this lien request."

On May 21, 2007, Schroeder conducted the second telephone conference with Boiarsky. Immediately prior to the hearing, Schroeder "reviewed [Form] 433-A, [Form] 433-B, and [the] nominee/alter ego info[rmation] in the collection admin[istrative] file." Schroeder noted that "[t]he 433-A and B were voluntarily

_____

[6]Schroeder recorded his case preparatory work and hearing notes from the three telephone conferences in the "Case Activity Record."

signed under penalty of perjury, and it is clear from the information developed by the R/O that [Gillum] has not disclosed all assets and income, and is still taking actions to shield income and assets from IRS and/or other creditors." Schroeder concluded that "[c]ollection options cannot be considered under these circumstances." During the telephone conference, Boiarsky had no objections to the tax-lien filing, so Schroeder sustained the filing. They "then discussed collection alternatives to the proposed levy action," and Boiarsky again proposed "that [the] IRS limit its collection action to the amount specified in the plea agreement and court judgment as this is [Gillum's] maximum ability to pay." But Schroeder

> informed [Boiarsky] that [he had] reviewed the financial statements and related info[rmation] in the collection admin[istrative] file and concluded that the financial statements did not provide full disclosure of income and assets controlled by [Gillum] and therefore [Schroeder] was unable to recommend acceptance of [Boiarsky's] proposal to limit collection to the terms of the restitution.

In response, Boiarsky "asked for details of the non-disclosure," but Schroeder "declined to discuss this at the time." Schroeder told Boiarsky that he would "research this request for disclosure of collection details and possibly seek guidance from Counsel." Schroeder stated that he would call Boiarsky later in the week to conclude the hearing. After the conference ended, Schroeder was "concerned about how much info[rmation] to give to [Boiarsky] regarding [Schroeder's] determination that [Boiarsky's] proposed collection alternative is not acceptable under the circumstances." After not finding any guidance related to the collection-disclosure issue on the IRS Appeals Office's website, Schroeder "[d]iscussed [the] case with [the] acting [Appeals Team Manager]." The Appeals Team Manager had never encountered the issue before and "was concerned about [an] ex-parte issue." Schroeder advised the Appeals Team Manager that he "had no discussion of [the] issues with Collection, but ha[d] only relied on the collection admin[istrative] file."

On May 22, 2007, Schroeder sought advice from IRS attorney Lisa Downs. Downs "found no ex-parte issue with [Schroeder's] reliance on info[rmation] in the collection admin[istrative] case file as [a] basis for determination regarding collection alternatives." Downs and Schroeder also "discussed the nominee/alter ego situation." The issue was "to what extent Appeals is obliged to discuss/explain/disclose to [Boiarsky] the basis for the determination—i.e., the financial statements [Gillum] submitted . . . do not fully disclose the assets and income available to [Gillum] by his nominee/alter ego activity." Downs told Schroeder that she would consider the issue and call him back. The next day, Schroeder reviewed Downs's response. Downs advised Schroeder "to adequately disclose why the amount offered is not sufficient and why it does not adequately reflect collection potential." Thereafter, Schroeder "[r]eviewed [the] collection admin[istrative] case file info[rmation] again to prepare for [a] conference with [Boiarsky]." Schroeder

> conclude[d] that it is very clear that [Gillum] has not accurately reported income and expenses, which makes it impossible for Appeals to accurately determine true ability to pay. He has done this by funneling income and paying personal expense through various entities for no apparent legitimate business reason.

Schroeder also found that Gillum had

> placed assets beyond the reach of creditors, even though he enjoys full use and benefit of these assets and is the de[ ]facto owner. Because these assets and any encumbrances to these assets have not been voluntarily disclosed, Appeals is unable to make a determination regarding net equity and collection potentialof [sic] them.

According to Schroeder, Gillum's "assets include real estate, vehicles, boats(including a houseboat) [sic], and ATVs."

On May 24, 2007, Schroeder conducted the final telephone conference with Boiarsky. Schroeder told Boiarsky that he had "again reviewed the information in the collection admin[istrative] file and . . . concluded that the proposed collection alternative cannot be accepted under the circumstances." Schroeder informed Boiarsky that documentation "clearly show[ed]" that Gillum failed to adequately disclose his income and expenses. Boiarksy responded that he was unaware of this information and that Gillum had not fully disclosed these actions to his own legal counsel. Boiarsky stated that he "understood why Appeals could not consider a collection alternative to the proposed levy at th[is] time." Schroeder and Boiarsky then discussed their disagreement regarding "the intent and effect of the court judgment regarding restitution . . . on [the] IRS's ability to administratively collect." Schroeder pointed out "that the order did not limit collection of the tax." Schroeder then stated "that legal and procedural requirements have been followed, the filing of the lien and issuance of the notice of intent to levy were appropriate, and these collection actions are therefore sustained."

On June 15, 2007, the IRS Appeals Office issued its "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330." The notice of determination sustained the tax-lien filing for 1998 and 2000–2002 and the proposed levy for 1996–2002. It verified that the hearing was timely requested, the settlement officer who conducted the hearing had no prior involvement with the specified tax periods, and legal and procedural requirements were satisfied. According to the notice of determination, the proposed levy was sustained because "neither the plea agreement nor the court judgment represent a settlement or compromise of the tax liability, and do not bar [the] IRS from taking additional collection actions." The notice of determination also addressed the "Consideration of Collection Alternatives," even though the issue was "not raised by the representative [(Boiarsky)] as an issue" in the CDP request or hearing. The notice of determination explained that,

[t]o evaluate this proposal[,] Appeals reviewed the collection administrative case file. This file contained financial statements (forms 433-A and 433-B) that were signed by the taxpayer under penalties of perjury on October 26, 2006. It also contained documentation and information secured by Collection in an effort to verify the taxpayer's financial statements. Appeals has determined from this review that the taxpayer has not accurately reported income and expenses, which make[s] it impossible to determine his true ability to pay the tax liability. The taxpayer has done this by diverting income through various entities (trusts, limited liability companies, and his wife) and paying personal expenses through these entities for no apparent reason other than to avoid taxes and collection of taxes. He has also placed assets beyond the reach of [the] IRS by purchasing them in the name of various entities he controls or transferring them to these entities. It is clear that the taxpayer maintains full use and benefit of these assets, which include real estate, vehicles, watercraft, and all-terrain vehicles. Because these assets and any encumbrances against these assets have not been disclosed, Appeals is not able to determine their net equity and collection potential. For these reasons Appeals cannot accept the only collection alternative proposed by the taxpayer's representative.

The notice of determination also concluded that the proposed tax lien filing and levy action properly balanced "the need for efficient collection of taxes" with the "concern that the collection action be no more intrusive than necessary."

C. *Notices to Cloverdale and LeStat Ops*

During the pendency of Gillum's CDP hearing, on May 15, 2007, the IRS sent letters to Cloverdale, as alter ego of Gillum, and a trust known as "LeStat Ops," as nominee of Gillum. These letters provided notice of the filing of tax liens and advised the entities of the right to a CDP hearing. By letters dated June 20, 2007, these two entities timely requested CDP hearings. On June 25, 2007, IRS Revenue Officer Robert Brown sent letters to Cloverdale and LeStat Ops acknowledging receipt of the hearing requests but advising the entities that they were "not entitled to a CDP hearing as the taxpayer has previously been afforded CDP rights regarding these same

tax periods." Brown indicated, however, that the entities were "entitled to a Collection Appeal with [his] immediate manager."

## D. *Tax Court*

On July 17, 2007, Gillum timely petitioned the tax court for judicial review of the IRS Appeals Office's determination. Gillum asked that the tax court overrule "the determinations in the Notice of Determination." Additionally, Gillum sought judicial review of the June 25, 2007 letters that the IRS sent to four entities that Gillum created, including Cloverdale and LeStat Ops, denying them the opportunity for CDP hearings with respect to the filing of tax liens against them as Gillum's alleged nominees, transferees, or alter egos.[7] In the petition, Gillum asserted that the proposed levy and tax-lien filing were "invalid because they are in contravention of the plea agreement and court order." Additionally, Gillum alleged that Schroeder and other IRS employees "refused to discuss or explain the factual basis" for the notice of determination, denied him an opportunity to address the facts underlying the notice of determination, and "declined to elaborate as to just how any such discussion or explanation might 'place the Government's interests in jeopardy[.']" According to Gillum, the IRS employees' actions produced a "CDP hearing [that] was neither fair nor impartial" and denied Gillum due process. As to the June 25, 2007 letters, Gillum asserted that the revenue officer, his supervisor, and Schroeder "refused to discuss or explain why Cloverdale Animal Clinic, LLC, LeStat Ops, Pireaus Group, and MRMLBS were considered to be nominees, transferees, and alter-egos of the taxpayer" and "declined to elaborate as to just how any such discussion or explanation might 'place the Government's interests in jeopardy[.']" Gillum contended

---

[7]"The record contains the June 25, 2007, letters, described *supra*, from [IRS] Revenue Officer Robert Brown to Cloverdale and Lestat Ops. The petition seems to assert that two other entities, Pir[ea]us Group and MRMLBS, received similar letters also dated June 25, 2007. The record does not contain copies of any such letters." *Gillum*, 2010 WL 5393884, at *5 n.9.

that "[t]he denial of CDP rights with respect to the nominee, transferee, and alter-ego matters constitutes a denial of constitutional due process."

In accordance with Tax Court Rule 91(e), Gillum and the IRS agreed to a stipulation of facts, which was "conclusive." According to the stipulation, "[a]ny relevance or materiality objection may be made with respect to all or any part of this stipulation at the time of submission, but all other evidentiary objections are waived unless specifically expressed within this stipulation."

The stipulated administrative record included, *inter alia*, (1) Schroeder's Case Activity Record; (2) Form 433-A; (3) Form 433-B; (4) a memorandum dated February 22, 2007, from IRS Revenue Officer Brown to IRS district counsel in Oklahoma City, Oklahoma, requesting approval to file alter ego and nominee liens and levies against several entities Gillum created ("Brown request"); (5) several diagrams detailing Gillum's alleged alter ego and nominee activities[8]; and (6) a memorandum from IRS Associate Area Counsel Bruce K. Meneely in Oklahoma City responding to the Brown request ("Meneely memorandum").

Prior to trial, Boiarsky, Gillum's counsel, submitted a pretrial memorandum indicating that he would call Schroeder, the IRS settlement officer, as a witness to elicit testimony that Schroeder

> refused to discuss or explain the factual basis for any of the CDP determinations; that, accordingly, no opportunity was afforded to [Gillum] to address any of the underlying facts relied upon in making those determinations; that he stated that any such discussion or explanation would "place the Government's interests in jeopardy"; and

---

[8]"The record does not reveal who prepared these diagrams." *Gillum*, 2010 WL 5393884, at *3 n.7.

that he further declined to elaborate as to just how any such discussion or explanation might "place the Government's interests in jeopardy."

On the morning of trial, the tax court heard arguments on the Commissioner's motion to quash the subpoena for Schroeder's testimony and corresponding motion in limine. Boiarsky argued that the court should deny the motions. The court asked whether Boiarsky's "contention" was that "the administrative record was incomplete," and Boiarsky responded, "In that regard, yes." Boiarsky argued that "the appeals officer . . . failed to give an adequate explanation for the determination." Based on those grounds, the court decided to permit Boiarsky "an opportunity to at least develop this evidence." The court was "not prepared to say at this point that there might not be some evidence that is missing from the administrative record" and noted that it was "hard to know at this point."

During trial, the stipulation of facts and exhibits were admitted without objection. Schroeder was the sole witness. Schroeder testified that the administrative record was "complete," as certified in his declaration. Schroeder confirmed that "the facts that [he] relied upon in making [his] determinations [were] part of the administrative record."

Boiarsky then had Schroeder read the paragraph entitled "Consideration of Collection Alternatives" contained in the notice of determination. Boiarsky focused on the paragraph's statement that, in evaluating Gillum's collection alternative, Schroeder had reviewed the collection administrative case file. This file "contained documentation and information secured by Collection in an effort to verify the taxpayer's financial statements." Boiarsky asked Schroeder, "The documentation and information referred to in that notice of determination, where in the administrative record is that documentation and information?" Boiarsky gave Schroeder the complete administrative record, and Schroeder then reviewed the Case Activity Record contained therein. Schroeder testified that he relied on "Exhibit AX, regarding

Mr. Gillum's activities," which was contained in the administrative record. Exhibit AX was the Brown request. Schroeder confirmed that he did not supply the Brown request to Boiarsky during the CDP hearing; however, he testified that he did discuss the document with Boiarsky "in general terms." Schroeder also identified other documents in the administrative record that he relied on in making his determination—"Exhibit AZ," the Meneely memorandum, and "Exhibit AY," the "work product from the revenue officer obtained from his collection file, diagram[m]ing the schemes employed by Mr. Gillum." According to Schroeder, he supplied this information, along with the Forms 433-A and 433-B to Boiarsky "in general terms."

Thereafter, the following exchange occurred between Boiarsky and Schroeder:

Q. [by Boiarsky]: Okay. If I understand your testimony, sir, it's that the administrative record here, which underlies the determination that you authored, the administrative record contains the information necessary to support those determinations; is that correct? The administrative record contains the information necessary to support the conclusions that you reached and the determinations?

A. [by Schroeder]: That is not correct.

Q. [by Boiarsky]: Then please clarify that for me.

A. [by Schroeder]: I guess the issue is whether or not the revenue officer's case file is part of the administrative record; is that what we're asking?

Q. [by Boiarsky]: No.

A. [by Schroeder]: Again, I don't know if the entire revenue officer case file is in there.

-14-

Q. [by Boiarsky]: It's not but you're certainly free to look at the record that you certified as being complete to see if it's there. Do you not know whether it's there?

A. [by Schroeder]: I don't know what's in that pile of papers right now.

Q. [by Boiarsky]: Okay. If you'd like to take a moment then and look? There's the complete file. It should be fairly easy to identify the collection officer's record, would it not?

A. [by Schroeder]: Yes. That file's not here. Parts of that file are here though actually. Again, his memorandum to and from counsel.

Q. [by Boiarsky]: All right. But that information is information that you relied upon in making your determinations in your notices of determination; is that correct? The information in the collection—

A. [by Schroeder]: Yes, yes.

Q. [by Boiarsky]: But that information is not part of the administrative record?

A. [by Schroeder]: Not part of this administrative record.

Q. [by Boiarsky]: And was not disclosed to me during the collection due process proceeding?

A. [by Schroeder]: Only in general terms.

On cross-examination, IRS attorney Downs asked Schroeder whether, "[w]hen [he] compiled [his] record for [his] determination, that record . . . contain[ed] the information that [he] relied on from the collection file." Counsel specifically referred Schroeder to three documents—"Exhibits AX, AY[,] and AZ." Schroeder confirmed that he took "[t]hose three documents . . . from the revenue officer's case file."

The tax court sustained the IRS's "determinations sustaining the filing of the notice of Federal tax lien and the proposed levy." *Gillum*, 2010 WL 5393884, at *8. First, the court rejected Gillum's challenge to his underlying liabilities, concluding that Gillum's "criminal plea agreement and judgment ordering restitution did not discharge, and do not limit [the IRS's] assessment and collection of, [Gillum's] civil tax liabilities for his taxable years 1996 through 2002." *Id*. at *7.

Second, the court concluded that Schroeder "did not abuse his discretion in rejecting any collection alternative based on doubt as to collectibility." *Id*. at *8. The court found that the "only collection alternative that [Gillum] proposed [was] to limit his 1996 through 2002 liability to $246,226; i.e., the amount of restitution ordered by the District Court in the criminal proceeding." *Id*. at *7. The court found that Schroeder did not abuse his discretion in rejecting this "collection alternative" as an "offer-in-compromise" because there was no doubt as to liability or collectibility, nor had Gillum "argued that his collection alternative was for the promotion of effective tax administration." *Id*. at *7–8.

Third, the tax court rejected Gillum's argument "that he was denied a fair collection hearing because the settlement officer did not disclose to his representative all the information in the collection administrative file which the settlement officer had reviewed in reaching his conclusions." *Id*. at *8. According to the court, "[c]ollection hearings are conducted in an informal setting that does not include the right to discovery." *Id*. The court pointed out that "[t]he information that the settlement officer reviewed related to matters that should have been within petitioner's knowledge, and the settlement officer did in fact share with petitioner's representative the nature of his concerns about petitioner's nondisclosure of income and assets." *Id*. And, the court emphasized that Gillum's failure to submit to Schroeder "all required financial information was reason enough for the settlement officer to reject his collection alternative." *Id*. The court "d[id] not see that the settlement officer's disclosure or nondisclosure of the materials in question had any

significant bearing on the fairness or outcome of [Gillum's] hearing." *Id*. In a footnote, the court noted that Schroeder had reviewed the Brown request and the Meneely memorandum in making his determination. *Id*. at *8 n.13. The court rejected Gillum's claim that these documents were not included in the administrative record because "[t]he parties have stipulated . . . that the stipulated exhibits, which include the materials in question, 'constitute the complete administrative record in this case[.']" *Id*. The court also noted that because Schroeder's trial testimony "had little probative value or relevancy," it did "not rel[y] upon this testimony in [its] analysis or holdings." *Id*.

Finally, the tax court declined to address whether Cloverdale and LeStat Ops were improperly denied CDP hearings as alter egos or nominees of Gillum "because they are not parties to this proceeding." *Id*. at *8.

## II. *Discussion*

On appeal, Gillum argues that the tax court erred in (1) upholding the IRS's notice of determination because he was not afforded a fair CDP hearing and (2) failing to recognize that his asserted alter egos and nominees were entitled to a CDP hearing.

## A. *Fairness of the CDP Hearing*

Gillum argues that the tax court erred in concluding that he was afforded a fair CDP hearing because Schroeder, the settlement officer, relied on information that was not part of the administrative record in making his determination. Gillum asserts that 26 U.S.C. § 6330 guarantees him the right to a fair hearing before an impartial settlement officer and a right of judicial review based on the underlying administrative record. According to Gillum, Schroeder admitted at trial to providing an incomplete administrative record to the tax court. He contends that Schroeder relied upon nonrecord information in making his determinations, thereby depriving the tax court of an adequate basis for review. Gillum contends that even though "there

may be information in the revealed portion of the administrative file tending to support the determinations reached," such information is insufficient to uphold the determination "because without disclosure of all information admittedly relied upon, the Court is deprived of any real opportunity to evaluate any unfairness or partiality, including circumstances of bias, improper ex parte communication, or 'prior involvement' which the statute prohibits."

"Congress created an administrative proceeding, commonly known as a 'collection due process hearing,' in the Internal Revenue Service Restructuring and Reform Act of 1998." *Robinette v. Comm'r*, 439 F.3d 455, 458 (8th Cir. 2006). Subsection (a) of 26 U.S.C. § 6330 "requires notice to the taxpayer of a right to a hearing before a levy is made," and subsection (b) "guarantees the right to a fair hearing before an impartial officer from the Internal Revenue Service Office of Appeals." *Id*. During the CDP hearing, a taxpayer is permitted to raise "'any relevant issue relating to unpaid tax or the proposed levy,' including 'challenges to the appropriateness of collection actions,' and 'offers of collection alternatives, which may include . . . an offer-in-compromise.'" *Id*. (quoting 26 U.S.C. § 6330(c)(2)(A)). "The appeals officer then must consider whether any proposed collection action 'balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.'" *Id*. (quoting 26 U.S.C. § 6330(c)(3)(C)).

Section 6330(d)(1) "affords a right of judicial review of the determination by the impartial hearing officer, in either the Tax Court or a United States District Court, depending on whether the Tax Court has jurisdiction." *Id*. In the present case, "[j]udicial review . . . was available in the Tax Court because the levy related to [Gillum's] underlying liability for unpaid income tax." *Id*. (citing 26 C.F.R. § 301.6330-1(f)(2)). "Review of the administrative decision is markedly deferential: if the amount of tax owed is not in dispute, courts may disturb the administrative decision only if it constituted 'a clear abuse of discretion in the sense of clear taxpayer

abuse and unfairness by the IRS.'" *Fifty Below Sales & Marketing, Inc. v. United States*, 497 F.3d 828, 830 (8th Cir. 2007) (quoting *Robinette*, 439 F.3d at 459).

> [W]here the IRS followed the statutes and regulations governing grants of relief, *see Speltz v. Comm'r*, 454 F.3d 782, 784–85 (8th Cir. 2006), and the appeals officer took into account the taxpayer's proposed alternative and the statutory balancing test, followed the prescribed procedures, gave a reasoned decision, and did not rely on any improper criteria or facts that are contrary to the evidence, we may not reverse simply because we would have weighed the equities differently than the appeals officer did. *See Orum v. Comm'r*, 412 F.3d 819, 820–21 (7th Cir. 2005).

*Id*. This court's review of the lower court's decision is de novo. *Id*. ("Our review of the district court's decision is de novo.").

"[F]or purposes of Tax Court review" of a "Notice of Determination issued by Appeals," "the administrative record" consists of

> [t]he case file, including the taxpayer's request for hearing, any other written communications and information from the taxpayer or the taxpayer's authorized representative submitted in connection with the CDP hearing, notes made by an Appeals officer or employee of any oral communications with the taxpayer or the taxpayer's authorized representative, memoranda created by the Appeals officer or employee in connection with the CDP hearing, and *any other documents or materials relied upon by the Appeals officer or employee in making the determination* under section 6330(c)(3) . . . .

Treas. Reg. 301.6330-1(f)(2), Q&A (4) (2006) (emphasis added). Thus, the "court's review of a collection due process decision rendered by an appeals officer under section 6330 is limited to the administrative record before the appeals officer, subject to [some] exceptions . . . ." *Fifty Below Sales*, 497 F.3d at 829.

But, "where a record created in informal proceedings does not adequately disclose the basis for the agency's decision, then it may be appropriate for the reviewing court to receive evidence concerning what happened during the agency proceedings." *Robinette*, 439 F.3d at 461. In such circumstances, the evidentiary proceeding "is not a *de novo* trial, but rather is limited to the receipt of testimony or evidence explaining the reasoning behind the agency's decision." *Id*.

Here, the tax court permitted Gillum to call Schroeder as a witness at trial in an attempt "to show that the settlement officer failed to adequately explain the reasons for his determination." *Gillum*, 2010 WL 5393884, at *8 n.13 (citing *Robinette*, 439 F.3d at 461). The tax court concluded that Schroeder's testimony "had little probative value or relevancy." *Id*. Therefore, it did "not rel[y] upon this testimony in [its] analysis or holdings." *Id*. Furthermore, the tax court "d[id] not see that the settlement officer's disclosure or nondisclosure of the materials in question had any significant bearing on the fairness or outcome of [Gillum's] hearing" because Gillum's "failure to provide the settlement officer all required financial information was reason enough for the settlement officer to reject his collection alternative." *Id*. at *8.

We agree with the tax court that Gillum was not denied a fair CDP hearing based on Schroeder's purported reliance on information that was not part of the administrative record in making his determination. First, contrary to Gillum's assertion, Schroeder did not admit to providing an incomplete administrative record to the tax court. The trial transcript reveals that Schroeder confirmed that the administrative record was "complete" and that "the facts that [he] relied upon in making [his] determinations [were] part of the administrative record." During trial, Schroeder referenced his Case Activity Record, which is included in the administrative record. The Case Activity Record provides that although Schroeder obtained "several files" on Gillum from the revenue officer, Schroeder "[r]eviewed [the] file" containing Form 433-A, Form 433-B, the Brown request, and the Meneely

memorandum. All of these documents are included in the administrative record. Consistent with the Case Activity Record, Schroeder testified at trial that, in addition to Forms 433-A and 433-B, he "relied on" the Brown request (Exhibit AX), the Meneely memorandum (Exhibit AZ), and several diagrams detailing Gillum's alleged alter ego and nominee activities (Exhibit AY).

In arguing that Schroeder admitted to relying on documents outside of the administrative record, Gillum relies on the exchange between Boiarsky and Schroeder at trial in which Boiarsky questioned Schroeder regarding whether the administrative record contained the information necessary to sustain Schroeder's determination. We find the exchange between Boiarsky and Schroeder unhelpful to Gillum's case. A careful reading of the exchange reveals that Boiarsky confused Schroeder with an ambiguous question. Schroeder's responses reflect his uncertainty regarding whether Boiarsky was asking him if the *entire* revenue officer's case file was included in the administrative record, not just those parts of the file that Schroeder relied on. Schroeder indicated that the entire file was not there, but that "[p]arts of the file" were included in the administrative record. Boiarsky then asked Schroeder whether "*that information* is information that you relied upon in making your determinations in your notices of determination." (Emphasis added.) Before Boiarsky could complete the question, Schroeder answered, "Yes, yes." "[T]hat information" refers back to Schroeder's statement that "[p]arts of the file," including the "memorandum to and from counsel," were in the administrative record. Boiarsky again asked whether "that information is not part of the administrative record," and Schroeder answered, "Not part of this administrative record." This convoluted exchange is not tantamount to a direct admission by Schroeder that he relied on documents outside of the administrative record. In fact, on cross-examination, Schroeder confirmed that the documents that he "relied on" from the revenue officer's file—the Brown request, the Meneely memorandum, and the diagrams—are included in the administrative record. According to Schroeder, those documents discussed Gillum's purported alter egos and nominees. He used those documents in evaluating the veracity of Gillum's Forms 433-

-21-

A and 433-B. And, on redirect examination, Schroeder again explained that he took the three aforementioned documents from the revenue officer's file and included them in the administrative record.

Second, even assuming that Schroeder did rely on documents outside of the administrative record, such error was harmless. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) ("We have no indication of any relevant distinction between the manner in which reviewing courts treat civil and administrative cases. Consequently, we assess the lawfulness of the Federal Circuit's approach in light of our general case law governing application of the harmless-error standard."). "Basing our review on the information [contained in the stipulated administrative record] that was before the appeals officer," we conclude that the record adequately justifies the IRS's determination. *Robinette*, 439 F.3d at 462.

As the tax court found, Schroeder did not abuse his discretion in denying Gillum's proposed collection alternative—limiting his liability to the amount in the restitution order—because no grounds exist "for compromising a liability" under 26 C.F.R. § 301.7122-1(b). *Gillum*, 2010 WL 5393884, at *7 ("The regulations set forth three grounds for compromising a liability: (1) Doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration."). First, Gillum "has put forward no legitimate issue regarding his civil tax liabilities." *Id*. Second, Gillum did not "expressly argue that his collection alternative was for the promotion of effective tax administration." *Id*. Finally, Gillum "submitted incomplete Forms 433-A and 433-B," thereby "fail[ing] to provide the settlement officer all financial information necessary to evaluate his ability to fully pay his civil tax liabilities." *Id*. at *8. Thus, Schroeder "did not abuse his discretion in rejecting any collection

alternative based on doubt as to collectibility." *Id*. (citing *Kansky v. Comm'r*, 93 T.C.M. (CCH) 921 (2007); *Criner v. Comm'r*, 86 T.C.M. (CCH) 655 (2003))[9]

B. *Alter Egos and Nominees*

Gillum also contends that "[b]ecause the CDP hearing in question [was not] . . . fair and impartial, the denial of the right to a CDP hearing with respect to the lien filing against asserted nominee and alter ego entities of [Gillum] [cannot] properly . . . be sustained." Gillum admits that 26 U.S.C. § 6320(b)(2) "does indeed provide for only one CDP hearing for each tax year," but he maintains that "an improper hearing" cannot "be counted as that 'one.'" Furthermore, he argues that although nominees and alter egos are not permitted a CDP hearing under 26 C.F.R. § 301.6320-1(b)(2), "the relevant 'person' here is [Gillum], and [Gillum] *is* a party to this proceeding." Thus, Gillum concludes that he is entitled to the requested CDP hearing on behalf of his asserted nominees and alter egos.

In response, the Commissioner argues that the tax court lacked jurisdiction to review letters from an IRS revenue officer to the purported alter egos and nominees because the court's jurisdiction under 26 U.S.C. § 6330(d)(1) is limited to reviewing determinations by the IRS Appeals Office. We agree.

"In cases where the IRS seeks to collect unpaid tax by means of a lien or levy, the Tax Court has jurisdiction to review an adverse determination by the IRS Office of Appeals." *Cleveland v. Comm'r*, 600 F.3d 739, 741 (7th Cir. 2010). Here, Gillum concedes in his brief that the "asserted nominee and alter ego matters were neither addressed nor considered in the . . . Notice of Determination." Thus, "as [Gillum]

---

[9]Nowhere in Gillum's brief does he challenge the tax court's conclusion that Schroeder did not abuse his discretion in rejecting Gillum's proposed collection alternative; instead, he only argues that he was not afforded a fair CDP hearing because Schroeder relied on information that was not part of the administrative record in making his determination.

concedes, the Office of Appeals was never involved in this matter and did not issue a notice of determination." *Id*. As a result, "the Tax Court [does] not have subject-matter jurisdiction because there was no issuance of a notice of determination" as to letters sent by an IRS revenue officer to Gillum's purported nominees and alter egos. *Id*.

Furthermore, the tax court "[could not] enter a decision affecting the [nominees and alter egos] because [they] [are] not . . . [parties] to this proceeding." *Dalton v. C.I.R.*, 135 T.C. 393, 401 (2010) (citing 26 C.F.R. § 301.6330-1(b)(3)).

### III. *Conclusion*

Accordingly, we affirm the judgment of the tax court.

COLLOTON, Circuit Judge, dissenting.

This appeal challenges the Tax Court's review, pursuant to 26 U.S.C. § 6330(d), of a determination of an appeals officer of the Internal Revenue Service in a collection due process hearing. The hearing concerned the filing of a lien and a levy made on the property of Thomas M. Gillum. *See* 26 U.S.C. §§ 6320(b), 6330(b). Gillum complains that the Tax Court conducted judicial review on an incomplete administrative record. In my view, this claim has merit, and the error is not harmless. I would therefore remand the case to the Tax Court for supplementation of the administrative record and a decision by that court on a complete record.

It is a basic principle of administrative law that judicial review of action by an administrative agency should be conducted on the complete administrative record. This principle is embodied in the Administrative Procedure Act, which provides that a reviewing court shall review the "whole record." 5 U.S.C. § 706; *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the *full* administrative record that was before the Secretary at the time he

-24-

made his decision.") (emphasis added) (footnote omitted). The rule prevents a party from withholding evidence unfavorable to its case or defending a determination with *post-hoc* rationalizations. *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). This court concluded in *Robinette v. Commissioner*, 439 F.3d 455 (8th Cir. 2006), that the Tax Court's review under § 6330(d) is governed by the APA, *id*. at 459-60 & n.4, and the Commissioner makes no argument here that the requirement of review on the whole record is inapplicable.

By regulation, the Department of the Treasury provides that the administrative record for purposes of review by the Tax Court includes all "documents or materials relied upon by the Appeals officer or employee in making the determination under section 6330(c)(3)." 26 C.F.R. § 301.6330-1(f)(2) (Q-F4, A-F4). The appeals officer in this case, David Schroeder, testified before the Tax Court that some information that he relied upon in making his determinations was not part of the administrative record. App. E-31. While there is no dispute that three particular exhibits on which Schroeder relied—Exhibits AX, AY, and AZ (including what Schroeder called the "memorandum to and from counsel")—were part of the record, App. E-32, the Tax Court's appellate review must be conducted on the whole record. Schroeder testified that only "[p]arts" of the revenue officer's file on which he relied were in the administrative record. App. E-31.

When Gillum argued to the Tax Court that the administrative record was incomplete, App. E-7; Brief of Petitioner at 7-9, *Gillum v. Commissioner*, 100 T.C.M. (CCH) 562 (2010) (No. 16110-07L), 2009 WL 7698301, the Tax Court's only response was that the parties had stipulated that the record was complete. *Gillum*, 100 T.C.M. (CCH) 562, 2010 WL 5393884, at *8 n.13. The Commissioner, however, should not be heard to rely on such a stipulation when the appeals officer subsequently admits before the Tax Court that he relied on information that was not among the stipulated exhibits. "For review to go forward on a partial record, we would have to be convinced that the selection of particular portions of the record was

the result of mutual agreement between the parties *after both sides had fully reviewed the complete record*." *Boswell Mem'l Hosp.*, 749 F.2d at 793 (emphasis added). Given that Gillum never received the complete administrative record, the court appropriately declines to affirm on the Tax Court's rationale.

When judicial review is conducted on an incomplete administrative record, the appropriate course is to remand for further review on a supplemented and complete record. *See, e.g.*, *Boswell Mem'l Hosp.*, 749 F.2d at 790; *Natural Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975); *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 243 (D.C. Cir. 2008) (Tatel, J., concurring); *cf. Okoroha v. INS*, 715 F.2d 380, 384 (8th Cir. 1983) (remanding case to administrative agency for reconsideration where the agency considered an administrative appeal on an incomplete record). The issue here is not, as the court would have it, whether Gillum was "denied a fair CDP hearing" because the appeals officer relied on information that was not later included in the administrative record before the Tax Court. *Cf. ante*, at 20. The question is whether Gillum was deprived of *appropriate judicial review* of the CDP hearing on a complete administrative record. That the partial record presented to the Tax Court may include sufficient evidence to support the appeals officer's determination is not grounds to affirm. With only a partial administrative record, we cannot know whether the Tax Court would have sustained the determination of the appeals officer on a complete record, or whether such a decision by the Tax Court should be affirmed on appeal with a full record. Without the whole record, Gillum also cannot explore whether the undisclosed portions of the record show impermissible "prior involvement" by the appeals officer, *see* 26 U.S.C. § 6330(b)(3), or other grounds for challenging the fairness of the due process hearing.

For these reasons, I would vacate the decision of the Tax Court and remand the case to the Tax Court for consideration of Gillum's appeal on the full administrative record.

———————————————————