T.C. Memo. 2007-40

UNITED STATES TAX COURT

BERNARD A. KANSKY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9544-04, 24528-04L.     Filed February 20, 2007.

Bernard A. Kansky, pro se.

Michael R. Fiore, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  In these consolidated cases, petitioner
seeks review pursuant to sections 6320(c) and 6330(d) of
respondent's determination sustaining the filing of tax liens
with respect to petitioner's Federal income taxes for years 1987,
1990, 1991, 1997, 1998, 2000, and 2001; petitioner also seeks
review pursuant to section 6404(h) of respondent's denial of

petitioner's request to abate interest for tax years 1987, 1990, and 1991.[1]

FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein by this reference.  When he filed his petition, petitioner resided in Needham, Massachusetts.

Petitioner's Tax Years 1987 Through 1991

Petitioner has been a practicing attorney for over 40 years. For tax years 1987 through 1991, petitioner failed to file Federal income tax returns.  In 1992, respondent issued a summons directing petitioner to appear at the Stoneham, Massachusetts, IRS office and produce his records relating to his 1987 through 1991 income.  In response to the summons, on November 12, 1992, petitioner produced seven or eight boxes of documents relating to personal expenses but not to his income.  By letter dated February 8, 1993, respondent's revenue agent notified petitioner that the documents he had provided failed to satisfy the summons and requested petitioner to provide bank deposit records and all books and records relating to petitioner's income.  Subsequently, at some unspecified date, petitioner produced what he characterizes as "one small shoe box size of records/receipts".

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code.  All Rule references are to the Tax Court Rules of Practice and Procedure.

In February 1996, after various meetings with respondent's agents, petitioner submitted his delinquent returns for 1987 through 1991. Petitioner's cover letter dated February 23, 1996, and addressed to respondent's revenue agent, alluded to personal problems in petitioner's family as the reason for the untimely filings and concluded: "Again, thank you for your professionalism and patience in the above matter during, and as a result of the difficulties we have faced".

On March 19, 1996, respondent issued a 30-day letter, proposing adjustments to petitioner's taxes for 1987 through 1991. By letter dated March 20, 1996, petitioner protested the proposed adjustments.

On September 16, 1998, after consideration of petitioner's case by the Appeals Office, respondent issued to petitioner a notice of deficiency for 1987 through 1991. On December 14, 1998, petitioner filed a petition in this Court, seeking redetermination of the proposed deficiencies and additions to tax. On November 5, 1999, pursuant to the parties' stipulation, this Court entered its decision in the deficiency case, deciding that petitioner had deficiencies of $2,413, $12,000, and $4,000, for 1987, 1990, and 1991, respectively, and had no deficiencies or overpayments for 1988 and 1989. Petitioner did not appeal this decision.

Petitioner's Returns for 1994 Through 2001

Petitioner filed Federal tax returns for 1994 through 2001. For every year except 1999, petitioner failed to fully pay the liabilities shown on those returns.

Installment Agreements

Petitioner entered into one or more installment agreements that eventually covered all years at issue except 2001. More particularly, according to respondent's transcripts of petitioner's account, petitioner's liabilities for various years were made subject to one or more installment agreements on the following dates:[2]

| Date | Tax Years |
|------|-----------|
| May 21, 1999 | 1994, 1995, and 1997 |
| Oct. 3, 1999 | 1998 |
| Jan. 1, 2000 | 1996 |
| Mar. 13, 2000 | 1987, 1990, and 1991 |
| Mar. 22, 2000 | 2000 |

According to respondent's transcripts of petitioner's account, between June 1999 and March 2002 petitioner made 31 installment payments of about $750 each; respondent credited these payments variously to petitioner's 1987, 1994, and 1995

---

[2] The record does not contain copies of any installment agreements or any detailed information about them. It is unclear from the record whether respondent and petitioner entered into new installment agreements on these various dates or whether existing installment agreements were modified to include additional liabilities on these various dates.

years.[3]  After March 2002, petitioner stopped making installment payments.

Collection Activity

On April 22, 2003, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 with respect to petitioner's Federal income tax liabilities for 1987, 1990, 1991, 1997, 1998, 2000, and 2001.  The notice indicated that the total tax petitioner owed for these years was about $65,231 (exclusive of interest), with about $42,631 of this amount attributable to 1987, 1990, and 1991.

On April 24, 2003, petitioner sent respondent a Form 12153, Request for a Collection Due Process Hearing.  On the Form 12153, petitioner disputed his underlying tax liabilities for 1987, 1990, and 1991 on the ground that his liabilities for those years should have been eliminated by net operating loss carrybacks and carryforwards from 1988 and 1989.  Petitioner complained that the time for claiming these carrybacks and carryforwards had "expired" while respondent's revenue agents had control of his

_____

[3] With respect to petitioner's 1987 year, respondent's transcripts of petitioner's account show installment payments of $750 each on July 30 and Aug. 30, 2000, Feb. 24, Mar. 8, and June 1, 2001, and Mar. 6, 2002.  With respect to petitioner's 1994 year, respondent's transcripts of petitioner's account show 18 installment payments of $750 each (except for one of $726) between Dec. 1, 1999, and Feb. 5, 2002.  With respect to petitioner's 1995 year, respondent's transcripts of petitioner's account show seven installment payments of $750 each (except for one of $708) between June 27, 1999, and Jan. 3, 2002.

files.  Petitioner alleged that he had attempted to satisfy his tax debt by making installment payments of $750 per month until he became ill with cancer.  Petitioner also alleged that the collection activity was "premature" because his request for "equitable relief" was still "under review".[4]

By letter dated April 13, 2004, respondent's settlement officer scheduled a hearing on May 6, 2004.  In the letter, the settlement officer stated that if petitioner wished her to consider collection alternatives, such as an offer-in-compromise, he had to provide, within 10 days, certain documentation, including completed collection information statements and a copy of his filed 2003 Federal income tax return.

At petitioner's request, the meeting was rescheduled and, by agreement, the hearing was held by telephone on June 8, 2004. Petitioner expressed a desire to submit an offer-in-compromise. The settlement officer set a deadline of July 14, 2004, for petitioner to submit a completed offer-in-compromise, as well as a completed Form 433-A, Collection Information Statement for Individuals, and Form 433-B, Collection Information Statement for Businesses.  At petitioner's request, the settlement officer extended this deadline to July 21, 2004.

---

[4] It appears that petitioner's reference to his request for "equitable relief" refers to his Form 843, Claim for Refund and Request for Abatement, filed on June 4, 2001, as discussed below.

On July 22, 2004, respondent received from petitioner Form 656, Offer in Compromise, and Form 433-A, but no Form 433-B. On the Form 656, petitioner checked boxes indicating that he was submitting his offer-in-compromise on the grounds of doubt as to liability, doubt as to collectibility, and effective tax administration. He offered "$12,500 * * * to be applied first to pay'ts to my Social Security Account" in compromise of tax liabilities totaling approximately $115,000 (including accrued interest). Petitioner altered the standard terms of the Form 656 so as to eliminate the statement that he was signing under penalties of perjury. As the basis for his offer-in-compromise, petitioner alleged that respondent's revenue agents had engaged in "ministerial and managerial misconduct" by failing to review more promptly the boxes of documents he had submitted on November 12, 1992, in response to the summons. He challenged his underlying tax liabilities for 1987 through 1991.

Petitioner also altered the standard terms of the Form 433-A so as to eliminate the statement that he was signing under penalties of perjury. On the Form 433-A, petitioner failed to disclose his ownership interest in certain real estate.

After evaluating petitioner's offer-in-compromise and Form 433-A, by letter dated September 30, 2004, the settlement officer requested additional information from petitioner, including a Form 433-B for petitioner's business, a copy of petitioner's 2003

return, and information about three specified real properties. In addition, the settlement officer stated that she had determined the fair market value of petitioner's residence to be $699,710 and offered petitioner an opportunity to submit an appraisal if he disputed this value. The settlement officer requested all information by October 15, 2004, and informed petitioner that she would be making her determination at that time.

Petitioner provided none of the additional documentation requested by the settlement officer. In an October 4, 2004, letter to the settlement officer, petitioner stated that his personal residence was in a "tired" condition and that his property assessment had been reduced from $600,000 to "$400,000. plus". He stated that two of the real properties for which the settlement officer had requested information were owned by trusts, and that the other real property was owned by his wife. He stated that he and his family had experienced health problems.

By letter dated October 6, 2004, the settlement officer confirmed a telephone conversation with petitioner in which it was agreed that petitioner would submit by October 15, 2004, all of the information requested in her letter dated September 30, 2004. The settlement officer also requested this additional information: (1) Documents verifying a reduced assessment on

petitioner's residence; (2) verification of petitioner's and his family's health problems; and (3) the trust documents and beneficiary schedules for the trusts referenced in petitioner's letter. The settlement officer requested this additional information by October 21, 2004, and informed petitioner that she would be making her determination at that time. Petitioner failed to provide any of the requested documentation.

On November 23, 2004, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 1987, 1990, 1991, 1997, 1998, 2000, and 2001 (the determination). The determination concluded that petitioner was not entitled to challenge his tax liabilities for 1987, 1990, and 1991, as those liabilities had been litigated in the Tax Court. In her determination, the settlement officer also concluded that petitioner did not qualify for an offer-in-compromise on grounds of doubt as to liability because, as just noted, petitioner was precluded from challenging his 1987, 1990, and 1991 liabilities. The settlement officer concluded that petitioner did not qualify for an offer-in-compromise on the basis of doubt as to collectibility because, after taking into consideration petitioner's equity in his residence, petitioner had the means to fully pay the liabilities.[5] Finally, she concluded that because

_____

[5] The settlement officer determined that petitioner had $192,892 of equity in his residence, on the basis of a "forced
(continued...)

petitioner had failed to comply with her requests to verify his health claims, he did not qualify for an offer-in-compromise on the basis of effective tax administration. Accordingly, no viable collection alternative having been proposed, the settlement officer sustained respondent's collection action.

In his petition in docket No. 24528-04L, petitioner challenges respondent's collection action. The petition states that "The only years which should be in question are the tax years 1987, 1990 and 1991" and adds:

> The only reason that the tax years 1987, 1990 and 1991 remain unpaid is that despite the taxpayer's earmarking funds for the years due, the IRS nevertheless applied those payments instead, in such a haphazard manner so as to leave the oldest years ongoing and outstanding, thereby increasing the amount of compounding interest for even greater and extended periods of time.

In his petition, petitioner alleges that he sustained an overall net loss for 1987 through 1991 and that loss carrybacks and carryforwards should eliminate any Federal income tax for these years. He claims to have already paid the IRS $27,000, representing 36 installment payments of $750 each.

---

[5](...continued)
sale value" of $508,880, reduced by a $123,096 encumbrance on the real estate and further reduced by 50 percent to reflect petitioner's joint ownership with his wife.

Request for Interest Abatement

In his Form 843, Claim for Refund and Request for Abatement, dated June 4, 2001, petitioner requested abatement of interest and penalties for 1990 on the following grounds:

> 1. IRS failed to work on 1990 tax return for 4 years after compelling production of records in 1992 and not getting to those records until early 1996.  Interest caused by IRS delays.
>
> 2. IRS failed to allow $20,281.67 for health ins. and related health benefits offered by office on 1040C schedule and limited deduction to modified 1040 Schedule A.
>
> 3. IRS by its undue delays i.e. 4 years - willfully and deliberately deprived taxpayer of 1989 carryfoward loss which would have totally eliminated all taxes interest and penalties and would have resulted in a zero balance for 1990 i.e. no taxes, penalties or interest. * * *
>
> 4. Also in furtherance of willful misconduct, IRS has not applied payments made on account to oldest principal balance, but applies payments erratically and sporatically to more recent balance claimed.
>
> 5. Also IRS has ignored payments made in 1996 designated as payment in full of all prior alleged outstanding claims.
>
> 6. IRS failed to advise that its results reported to MA

By letter dated April 17, 2002, respondent's technical support manager advised petitioner that his claim for interest abatement would be denied because there was "no error or delay relating to the performance of a ministerial act in processing the examination of your return" and because the IRS could not consider petitioner's claims for income tax abatements as part of a claim for abatement of interest under section 6404.  By letter

dated April 22, 2002, petitioner requested reconsideration by respondent's Office of Appeals.

On January 9, 2004, respondent sent petitioner a final determination disallowing petitioner's request for abatement of interest for 1987, 1990, 1991.[6]

In his petition in docket No. 9544-04, petitioner assigns error as follows to respondent's refusal of his request for abatement of interest:

> 1. The IRS Stoneham, MA office wrongfully witheld my records after subpoena for nearly 5 years before returning them to amend/file said returns.
>
> 2. If timely returned, the 1988 and 1989 losses could have be used to eliminate all taxes for 1987, 1990, and 1991.
>
> 3. Penalties were assessed unfairly given the extraordinary family circumstances during the period which included death of father (1987); death of mother (1989); daughter becoming total disabled for life;
>
> 4. Associate attempting suicide (April, '91)
>
> 5. 18 year old son - major kidney surgery (emergency) (1989); and
>
> 6. TP being in poor health and under medical care of MGH for multiple medical problems.* (1987-'91)
>
> 7.*Also not given full credit for $750. per month POA between 1997-2001.

---

[6] Although petitioner's Form 843 requested interest abatement for only 1990, it appears that respondent treated petitioner's Form 843 as a request for interest abatement for 1987, 1990, and 1991.

8. Advised for Tax Court by IRS agent that penalties nominal and not to be concerned about interest which was incorrect.

OPINION

A.  Burden of Proof

The burden of proof is generally upon petitioner, except as may be otherwise provided by statute or determined by the Court. See Rule 142(a).  For the first time on reply brief, petitioner contends, with little elaboration, that respondent has the burden of proof pursuant to section 7491.  Because petitioner did not raise this argument or position in his pretrial memorandum, at trial, or on opening brief, respondent has had no opportunity to address petitioner's position.  Petitioner's attempt to raise this argument on reply brief is untimely and prejudicial to respondent.  See Estate of Deputy v. Commissioner, T.C. Memo. 2003-176.

More fundamentally, section 7491 has no applicability to these consolidated cases.[7]  Section 7491(a) operates to shift the burden of proof to the Commissioner in certain circumstances with

---

[7] Moreover, petitioner failed to establish that sec. 7491 was in effect at any time relevant to these cases.  Sec. 7491 is effective with respect to court proceedings arising from examinations commenced after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 727.  We question whether the "examination" in this case commenced after July 22, 1998, as required for sec. 7491 to apply.  It appears obvious that at least with respect to 1987, 1990, and 1991, the examination commenced well before July 22, 1998.

respect to any factual issue relevant to ascertaining the taxpayer's liability for tax imposed by subtitle A or B.  See sec. 7491(a)(1); Rule 142(a)(2).  In one of these consolidated cases, petitioner seeks review of respondent's failure to abate interest.[8]  Because interest is not imposed by subtitle A or B but instead is imposed by section 6601, which is part of subtitle F, section 7491 does not apply to petitioner's interest-abatement claim.  See Hawksley v. Commissioner, T.C. Memo. 2000-354, n.13. In the other consolidated case, petitioner seeks review of respondent's collection action but, as discussed infra, is precluded from challenging his underlying tax liability. Accordingly, there is before us no legitimate factual issue relevant to ascertaining petitioner's liability for tax imposed by subtitle A or B within the meaning of section 7491(a).[9]

---

[8] Petitioner also appears to seek abatement of taxes and penalties under sec. 6404.  As discussed more fully infra, we lack jurisdiction over those claims.

[9] Even if we were to assume, for purposes of argument, that sec. 7491 was in effect for some relevant time and that petitioner had legitimately raised some factual issue as to which sec. 7491 might be relevant, petitioner has failed to establish that he has met the prerequisites for shifting the burden of proof under sec. 7491(a)(2).  See Higbee v. Commissioner, 116 T.C. 438 (2001) (taxpayers bear the burden of proving that the requirements of sec. 7491 are met).  For instance, for the burden to shift to the Commissioner, the taxpayer must, among other things, cooperate with reasonable requests by the Commissioner for "witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2)(B).  Petitioner has introduced no evidence to show that he satisfies this requirement.  To the contrary, the evidence in the record indicates that petitioner
(continued...)

Consequently, the burden of proof remains upon petitioner. See Rule 142(a).

B. Review of Collection Action

Section 6321 imposes a lien in favor of the United States on all property and property rights of a person who is liable for and fails to pay taxes after demand for payment has been made. The lien arises when assessment is made and continues until the assessed liability is paid. Sec. 6322. For the lien to be valid against certain third parties, the Secretary must file a notice of Federal tax lien; within 5 business days thereafter, the Secretary must provide written notice to the taxpayer. Secs. 6320(a), 6323(a). The taxpayer may request an administrative hearing before an Appeals officer. Sec. 6320(b)(1). Once the Appeals officer issues a determination, the taxpayer may seek judicial review in the Tax Court or a District Court, as appropriate. Secs. 6320(c), 6330(d)(1).

Section 6330(c)(2) prescribes the matters that a person may raise at an Appeals Office hearing, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. The existence or amount of the underlying tax liability may be contested at an Appeals Office hearing only if the taxpayer did

---

[9](...continued)
failed to comply fully with respondent's requests for information in a timely fashion, even after respondent issued a summons.

not receive a notice of deficiency or did not otherwise have an opportunity to dispute that tax liability.  Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180-181 (2000).

If the validity of the underlying tax liability is properly at issue, we review that issue de novo.  See Sego v. Commissioner, supra at 609-610.  Other issues we review for abuse of discretion.  Id.

1.  Underlying Tax Liability

Petitioner challenges his underlying liabilities for 1987, 1990, and 1991 on the ground that alleged net operating loss carrybacks and carryforwards from 1988 and 1989 should eliminate any liabilities for these years.  Because petitioner received a notice of deficiency for his tax years 1987 through 1991, he is not entitled to challenge the existence or amount of his tax liabilities for these years in this collection proceeding.  See secs. 6320(c), 6330(c)(2)(B); Sego v. Commissioner, supra at 609; Goza v. Commissioner, supra at 180-181.  Moreover, because this Court adjudicated petitioner's liabilities for these years pursuant to a stipulated decision in the prior deficiency proceeding, the doctrine of res judicata prevents petitioner from relitigating in this proceeding his liabilities for 1987, 1990, and 1991.  See Newstat v. Commissioner, T.C. Memo. 2004-208.

2.  Application of Installment Payments

Petitioner alleges that for some months he made monthly installment payments of $750 each; he has been vague and inconsistent in describing the total amount of installment payments he claims to have made.[10]  Nevertheless, petitioner argues on brief that if his installment payments to the IRS had been correctly credited to his account, he would have no outstanding balance due for any year relevant to these cases.  He contends that respondent erred in failing to follow "standard accounting practices" so as to apply his payments "to the oldest principal balance first".

Petitioner has failed to establish that respondent committed error in this regard.  The record indicates that at least some of petitioner's installment payments were made before March 13, 2000, when petitioner's 1987, 1990, and 1991 liabilities became subject to an installment agreement.  Clearly, respondent did not err by applying these pre-March 13, 2000, installment payments to years other than 1987, 1990, and 1991.  Respondent's records indicate that ultimately petitioner received credit for 31 payments of approximately $750 each, some of which were in fact

---

[10] In his petition filed in docket No. 24528-04L, petitioner alleges that his installment payments totaled $27,000.  In his pretrial memorandum, petitioner states that he made installment payments totaling "more than $24,000".  On opening brief, petitioner asserts that his installment payments totaled $29,503.  On reply brief, petitioner asserts that his installment payments were "$27,000. plus".

credited against petitioner's 1987 liability.  The record contains no credible evidence to suggest that these installment payments were improperly credited or that petitioner made additional payments that were not credited.

   3.  Collection Alternatives

   Petitioner has not expressly assigned error to the settlement officer's rejection of his offer-in-compromise.  To the extent that the petition might be construed to raise such a claim by implication, we hold that the settlement officer did not abuse her discretion in rejecting petitioner's offer-in-compromise, inasmuch as petitioner was not entitled to challenge his underlying tax liabilities for 1987, 1990, and 1991, see sec. 301.7122-1(b)(1), Proced. & Admin. Regs.; failed to timely comply with the settlement officer's requests for complete current financial information to establish doubt as to collectibility or economic hardship, see sec. 301.7122-1(b)(2) and (3), Proced. & Admin. Regs.; failed to submit a copy of his 2003 tax return to show the settlement officer that he was in current compliance with filing requirements, see Rodriguez v. Commissioner, T.C. Memo. 2003-153; and altered the standard terms of Form 656 so as to delete the statement that he was signing the form under penalties of perjury, see Rev. Proc. 2003-71, sec. 4.01, 2003-2 C.B. 517 (Form 656 must be signed under penalty of perjury and none of its standard terms may be stricken or altered).

- 19 -

## 4. Conclusion

Petitioner has failed to make a valid challenge to the appropriateness of respondent's collection action.

## C. Request for Abatement of Interest

In his petition, petitioner requests us to abate all interest and penalties for 1987, 1990, and 1991.[11]

Section 6404(e)(1) provides that the Commissioner may abate interest on any deficiency or payment of income, gift, estate, and certain excise taxes to the extent that the deficiency or any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial act by an officer or employee of the Commissioner.[12] Such an error or delay in

---

[11] On brief, petitioner seems to suggest that he is also requesting abatement of income tax for 1987, 1990, and 1991 and may be requesting abatement of interest, taxes, and penalties for other years as well. We decline to consider these issues raised for the first time on brief, for to do so would result in surprise and prejudice to respondent. See Sundstrand Corp. v. Commissioner, 96 T.C. 226, 346-347 (1991); Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). In any event, in the administrative proceeding, petitioner did not seek interest abatement for years other than 1987, 1990, and 1991; in this proceeding, petitioner has alleged no facts or legal basis to support any claim for abatement of interest for years other than 1987, 1990, and 1991. As discussed infra, review of petitioner's challenge to taxes and penalties is precluded in these cases.

[12] In 1996, sec. 6404(e) was amended to permit abatement of interest for "unreasonable" error or delay resulting from the performance of ministerial or "managerial" acts. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996). The amended provision applies to tax years beginning after July 30, 1996. Id. sec. 301(c). As previously
(continued...)

performing a ministerial act is taken into account only if it is in no significant aspect attributable to the taxpayer, and only if it occurs after the IRS has contacted the taxpayer in writing regarding the deficiency or payment.

Section 6404(e) is not intended to be "used routinely to avoid payment of interest" but rather is to be "utilized in instances where failure to abate interest would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

1. <u>Jurisdiction</u>

We have jurisdiction to decide whether respondent's failure to abate interest under section 6404(e) was an abuse of discretion. See sec. 6404(h). Review of petitioner's challenge to his underlying liability for taxes and penalties is precluded in these cases, if not by the limitations of section 6404(h), which gives the Tax Court jurisdiction only with respect to claims for abatement of interest, see <u>Krugman v. Commissioner</u>, 112 T.C. 230, 237 (1999), then, as previously discussed, by

---

[12](...continued)
discussed, in neither the administrative proceeding nor this proceeding has petitioner properly challenged respondent's failure to abate interest for years other than 1987, 1990, and 1991. Therefore, the amendment is inapplicable to the instant cases. We intend no inference that we would reach a different result in these cases if the amendment were applicable.

virtue of the doctrine of res judicata and the operation of section 6330(c)(2)(b).

2. <u>Ministerial Error</u>

Petitioner has failed to show error or delay by respondent's officers or employees in performing a ministerial act within the meaning of section 6404(e).  A "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  See <u>Corson v. Commissioner</u>, 123 T.C. 202, 207 (2004); sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  The exercise of judgment or discretion, such as the Commissioner's deliberation concerning the proper application of Federal tax law or other law, is not a ministerial act.  <u>Corson v. Commissioner</u>, <u>supra</u>.

Petitioner alleges that respondent's Stoneham, Massachusetts, office wrongfully "withheld" his records for nearly 5 years after obtaining them by summons.  The mere passage of time in such circumstances, however, does not establish erroneous or dilatory ministerial acts by respondent.  See <u>Hanks v. Commissioner</u>, T.C. Memo. 2001-319.

It was not until 1996 that petitioner finally submitted his delinquent returns for 1987 through 1991.  Relatively soon

thereafter, respondent issued petitioner a 30-day letter, proposing adjustments. Petitioner filed an administrative appeal, and after the notice of deficiency was issued in 1998, petitioner litigated the deficiency in the Tax Court. That litigation concluded in 1999; petitioner then entered into an installment agreement with the IRS. In 2002, petitioner stopped making installment payments. In these circumstances, we discern no error or delay by respondent's officers or employees in performing a ministerial act.

Petitioner alleges that respondent failed to give him proper credit for installment payments made. As previously discussed, we find petitioner's contentions in this regard to be unfounded. In any event, respondent's decision in this case to apply payments to a particular year's tax liability does not constitute a ministerial act within the meaning of section 6404(e). See Boyd v. Commissioner, T.C. Memo. 2000-16.

3. Significant Aspects of Delay Attributable to Petitioner

Moreover, even if we were to assume, for the sake of argument, that respondent's officers or employees improperly delayed performing (or failed to perform) one or more prescribed ministerial acts, we would nevertheless conclude that significant aspects of any such failure were attributable to petitioner, so as to preclude relief under section 6404(e). It was petitioner's own fault that he failed to file returns for 1987 through 1991,

forcing respondent to take action to secure the filing of the returns.  Because of petitioner's lack of cooperation, respondent eventually resorted to summoning petitioner's records.  As previously noted, it was not until 1996 that petitioner finally submitted his delinquent returns for 1987 through 1991.  Notably, petitioner's accompanying cover letter attributed the late submission to his health problems rather than to any error or delay by respondent's employees; petitioner's letter thanked the IRS agents for their "professionalism and patience".

In sum, petitioner has not shown that respondent abused his discretion in failing to comply with petitioner's request for interest abatement.

We have considered all arguments made by petitioner and have found those arguments not discussed herein to be moot or without merit.[13]

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.

---

[13] Although petitioner alleges in his petition that an IRS agent advised him not to be concerned about interest, which was "incorrect", petitioner has not expressly raised this issue at trial or on brief.  We deem petitioner to have abandoned any such issue.  In any event, the record contains no evidence corroborating this claim.