T.C. Memo. 2014-103

UNITED STATES TAX COURT

KELVIN TRENT TUCKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15706-12L.                    Filed May 29, 2014.

In response to R's notice of intent to levy and notice of Federal tax lien filing, P's request for a collection due process ("CDP") hearing under I.R.C. sec. 6330(d) for his 2009 income tax stated that he wanted a collection alternative--i.e., an offer-in-compromise ("OIC"). At the CDP hearing before the Office of Appeals ("Appeals"), P submitted partially completed financial statements (on Forms 433-A) and an OIC concerning his 2009 income tax liability. From September until December 2011 P timely made sufficient periodic payments pursuant to his OIC, as required by I.R.C. sec. 7122(c)(1)(B)(ii). In January 2012 R's Centralized OIC Unit ("COIC") determined that P had not provided the required financial information and notified P that it had sent the case back to Appeals for a final decision. Upon receiving notice that the COIC had returned the case to Appeals, P ceased making periodic payments. To further evaluate P's OIC, Appeals again requested documentation concerning P's assets and income. P requested and received several extensions of deadlines to provide this additional information, but he

**[*2]** never fully complied with Appeals' request. On the basis of the financial information provided, Appeals determined P could not fully pay his 2009 liability. Appeals determined to reject P's OIC and proceed with the proposed levy and notice of Federal tax lien to collect P's unpaid 2009 liability. P filed a petition in this Court. P and R jointly moved to submit this case pursuant to Rule 122, Tax Court Rules of Practice and Procedure.

Held: Appeals did not abuse its discretion in rejecting P's OIC and determining to proceed with the proposed levy and to sustain the notice of Federal tax lien, because P failed to produce all the requested documentation about his assets and income.

Held, further, Appeals did not abuse its discretion in rejecting P's OIC for failure to make the required periodic payments.

Eric William Johnson, for petitioner.

Christina L. Cook and John Schmittdiel, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: This is a collection due process ("CDP") appeal pursuant to section 6330(d),[1] in which petitioner Kelvin Trent Tucker asks this Court to review the determination by the Office of Appeals ("Appeals") of the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (codified in 26 U.S.C., and referred to herein as "the Code") as in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Internal Revenue Service ("IRS") to deny Mr. Tucker's request for a collection alternative and to proceed with levies and with the filing of a notice of Federal tax lien to collect his unpaid Federal income tax for tax year 2009. The parties jointly moved to submit this case for consideration pursuant to Rule 122, reflecting their agreement that the relevant facts could be presented without a trial, and we granted that motion.[2] The issue is whether Appeals abused its discretion in making its determination to sustain the IRS's collections actions and reject Mr. Tucker's offer-in-compromise ("OIC"). We hold that Appeals did not abuse its discretion.

---

[2]The burden of proof is generally on the taxpayer, see Rule 142(a), and the submission of a case under Rule 122 does not alter that burden, see Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

**[*4]**                                   Background

At the time he filed his petition herein, Mr. Tucker resided in Minnesota.
The stipulated record[3] establishes the following facts, which Mr. Tucker does not
dispute.

Mr. Tucker's 2009 liability

Mr. Tucker does not dispute his underlying tax liability.  On his 2009
Federal income tax return, Mr. Tucker reported an income tax liability of $127,761
and tax withheld of $15,187.  With his income tax return, Mr. Tucker included a
partial payment of $600.  The IRS summarily assessed the amount of tax shown on
the return, plus statutory interest and a penalty pursuant to section 6651(a)(2) for
failure to timely pay tax.  Notice and demand for payment were sent to
Mr. Tucker, but he failed to pay in full the assessed amounts.

---

[3]The stipulated record consists of:  (1) the facts alleged in Mr. Tucker's
petition filed with this Court on June 19, 2012, to the extent they are admitted in
respondent's answer filed July 10, 2012; (2) the exhibits attached to respondent's
motion for summary judgment filed August 14, 2013; (3) the administrative record
attached to the declaration of Christina L. Cook in support of respondent's motion
for summary judgment filed August 14, 2013; and (4) the exhibits attached to
Mr. Tucker's response to respondent's motion for summary judgment filed on
September 5, 2013.

**[*5]** The IRS's proposed levy and notice of Federal tax lien

On February 7, 2011, the IRS issued to Mr. Tucker a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing". Mr. Tucker's unpaid balance for tax year 2009 (with accruals for interest and additions for the late payment of tax) was $121,529.34 at that time. On March 8, 2011, the IRS issued to Mr. Tucker a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320". The amount stated on the notice of lien was $120,140.49.

CDP hearing

Mr. Tucker thereafter timely submitted Forms 12153, "Request for a Collection Due Process or Equivalent Hearing", which were also signed by his attorney. On those Forms 12153, Mr. Tucker checked the boxes to indicate a desire for an OIC.[4] Appeals acknowledged Mr. Tucker's request and, in a letter dated May 26, 2011, scheduled an Appeals hearing and requested certain documentation, including a "List of all other assets you own, including their fair market value and verification of any encumbrances." By letter dated June 9, 2011, Mr. Tucker's attorney requested a face-to-face hearing in St. Paul, Minnesota, and

---

[4]Mr. Tucker also checked the box to indicate interest in an installment agreement ("IA"), but he has agreed that an IA is no longer an appropriate collection alternative because of his current employment status, and he did not propose an IA. We therefore do not consider this issue.

[*6] included with the request a Form 433-A, "Collection Information Statement for Wage Earners and Self-Employed Individuals". The Form 433-A reported $2,000 worth of equity in personal assets described as "VARIOUS".

On August 5, 2011, Appeals sent to Mr. Tucker a letter scheduling his CDP hearing for September 9, 2011, and stated that in order for Appeals to consider alternative collection methods, Mr. Tucker needed to provide within 14 days (i.e., by August 19, 2011): (1) bank statements from May 1 through July 31, 2011; (2) wage and income information from May 1 through July 31, 2011; (3) mortgage statements for May, June, and August 2011; and (4) a list of personal assets.

Mr. Tucker failed to provide all the requested documentation to Appeals by the August 19, 2011, deadline. Instead, in a letter dated September 2, 2011 (i.e., one week before the scheduled CDP hearing), Mr. Tucker's attorney responded that certain financial information was unavailable and stated that he would fax the requested bank statements later that week. On September 7, 2011, Mr. Tucker provided only the requested bank records to Appeals. During a telephone call with Appeals on September 9, 2011, Mr. Tucker's attorney and Appeals agreed to conduct Mr. Tucker's CDP hearing via telephone, and the Appeals officer requested the additional financial information for the second time, which Mr. Tucker's attorney agreed to provide by September 26, 2011. Mr. Tucker

**[*7]** submitted some financial documentation over the course of the next few weeks but did not provide a list of personal assets as requested by Appeals. In a letter dated September 9, 2011, Mr. Tucker's attorney stated that Mr. Tucker had in his possession an NBA championship ring that was not listed on his Form 433-A. He estimated "that the ring may have value of approximately $10-20,000" but stated that it had not been appraised.

In a letter dated September 27, 2011, Mr. Tucker's attorney notified Appeals that he would like to submit an OIC as part of his appeal. The letter stated: "The terms of the offer are as follows: $100 per month payable each month for six months, followed by $30,000 payable over three years at $833 per month." Attached to the letter was a Form 656, "Offer in Compromise", a payment of the filing fee, and the first payment under the schedule Mr. Tucker proposed in his OIC, as required by section 7122(c)(1)(B)(i). The standard terms by which Mr. Tucker made his offer included the following:

> You must continue to make these monthly payments while the IRS is considering the offer. Failure to make regular monthly payments will cause your offer to be returned.
>
>      \*     \*     \*     \*     \*     \*     \*
>
> e)     Once an authorized IRS official signs this form, my offer is considered pending as of that signature date and it remains pending until the IRS accepts, rejects, returns, or terminates my offer or I

[*8] withdraw my offer. An offer will be considered withdrawn when the IRS receives my written notification of withdrawal by personal delivery or certified mail or when I inform the IRS of my withdrawal by other means and the IRS acknowledges in writing my intent to withdraw the offer.

When he submitted his OIC in late September 2011, Mr. Tucker had not yet provided the list of personal assets requested by Appeals on August 5, 2011.

Appeals' consideration of the OIC

Immediately following the receipt of his OIC, Appeals forwarded Mr. Tucker's OIC to the IRS's Brookhaven Centralized Offer in Compromise Unit ("COIC") for consideration. On November 6, 2011, the COIC sent Mr. Tucker a letter confirming receipt of his OIC. In this letter, the COIC noted that the "periodic payment offer includes your proposed payment schedule. You must make the payments on time, as shown in your schedule, while we evaluate your offer. Failure to make the payments may result in returning your offer without further consideration." (Emphasis added.) A copy of that letter was sent to Mr. Tucker's attorney on the same day. The record reflects that, for October, November, and December 2011, Mr. Tucker timely submitted the $100 periodic payments that he had promised. On December 8, 2011, the COIC contacted Mr. Tucker's attorney via telephone and requested the following financial information:

[*9]  1) Updated Form 433-A
2) Statement regarding current employment status and verification of any income.
3) Current bank statements and statement regarding source of all deposits
4) Mortgage balance
5) 401k balance
6) Statement regarding disposition of proceeds from distributions
7) Proof of payment of life insurance expenses
8) Proof of payment of health insurance expenses
9) Proof of payment of child care expenses
10) Statement regarding status of business - Trent Tucker's Hoops Club, Inc.

The COIC gave Mr. Tucker's attorney a December 23, 2011, deadline to submit the requested information and warned Mr. Tucker's attorney that failure to do so by that date could result in the return of the offer to Appeals for further consideration. Neither Mr. Tucker nor his attorney provided the requested financial information to the COIC.

The COIC processed Mr. Tucker's OIC but determined that it could not calculate his reasonable collection potential ("RCP")--which must be determined as a prerequisite to approval of an OIC--because Mr. Tucker had not provided the requested financial information. As a result, on January 11, 2012, the COIC returned the OIC offer to Appeals for further consideration. By separate letters dated January 12, 2012, both Mr. Tucker and his attorney were informed of the recommendation by the COIC that Mr. Tucker's OIC should be returned:

[*10] <u>The decision to return your Offer is a preliminary decision</u> made by Collection personnel.  Due to the fact that you have filed a request for a Collection Due Process (CDP) hearing, we are forwarding your case to Appeals.  <u>A final determination on the (OIC) will be issued by Appeals in conjunction with the CDP</u>." [Emphasis added.]

<u>Continued interaction with Appeals</u>

After Mr. Tucker's OIC was returned in January 2012 Mr. Tucker's attorney continued to work with Appeals to discuss the OIC.  During a telephone call on February 7, 2012, the Appeals Officer confirmed with Mr. Tucker's attorney that the OIC had been returned but stated that the offer had not yet been officially rejected and would not be rejected until he (the Appeals Officer) made the final decision.  Appeals then made its third request for additional financial information by reiterating that it would need Mr. Tucker to provide to Appeals by February 24, 2012, the additional information requested by the COIC, and stating that if the information was not provided, Appeals would make a decision on the OIC on the basis of the information available.[5]  Also during this conversation, Appeals and Mr. Tucker's attorney agreed that an IA was no longer a viable option because Mr. Tucker was no longer working.  In a letter dated

---

[5]In a letter dated February 7, 2012, the Appeals Officer requested that Mr. Tucker provide the additional financial information requested by the COIC and gave a deadline of February 24, 2012, to provide it.

[*11] February 19, 2012, Mr. Tucker's attorney noted that the NBA championship ring was not insured, that there was no insurance appraisal of the ring, and that Mr. Tucker's income at the time was approximately $400 per month. On February 27, 2012, Mr. Tucker's attorney contacted Appeals and requested a face-to-face meeting, which Appeals scheduled for March 23, 2012. Mr. Tucker and his attorney met with Appeals but still did not provide the additional financial information requested on February 7, 2012. At the face-to-face meeting on March 23, 2012--and for the fourth time overall--the Appeals Officer renewed his request for the financial information and set a deadline of April 6, 2012, for providing that information. The Appeals Officer noted that he would make a determination on the basis of information available to him if no additional information was provided by that deadline.

Some additional information provided

In April 2012 Mr. Tucker's attorney provided certain records to Appeals ("the April 2012 records"), including: a Form 433-A dated April 5, 2012; investment account records; life insurance account records; and bank statements. The IRS's records reflect that it received the April 2012 records, and we assume (in Mr. Tucker's favor) that Appeals received them before the April 6, 2012, deadline.

**[\*12]** In the April 2012 records, Mr. Tucker asserted that the mortgage loan for his town home had already been foreclosed upon. On his April 2012 Form 433-A, Mr. Tucker again represented that he had equity totaling $2,000 in property he described as "VARIOUS". The Form 433-A made no mention of the NBA championship ring in Mr. Tucker's possession, nor did it itemize his personal assets as Appeals had requested. Also included in the April 2012 records were bank statements for Mr. Tucker's checking account and retirement accounts showing minimal or no balance.

On April 18, 2012, Mr. Tucker's attorney spoke with Appeals via telephone. Appeals--for the fifth time--requested information regarding Mr. Tucker's personal assets, including the value of Mr. Tucker's NBA championship ring--specifically, whether the ring was insured and, if so, for what amount. (The next day Mr. Tucker's attorney advised by letter: "His ring is not insured, so there is no insurance appraised value.") Appeals also inquired about an updated employment status for Mr. Tucker and asked who would be making the periodic payments, since Mr. Tucker's Form 433-A reported insufficient income to make

[*13] those payments.  Finally, Appeals raised the issue of why the periodic

payments had not been made since December 2011:[6]

> 4.  I asked * * * [Mr. Tucker's attorney] about TIPRA[7] payments -
> why haven't they been made? * * * [Mr. Tucker's attorney] was
> under the impression the OIC had been rejected by COIC.  I noted
> that it was their preliminary decision to return the OIC because
> requested fianancial [sic] information wasn't received.  I explained
> that I am the one that will make [the] final determination on OIC and
> as such, TIPRA payments must be made. * * * [Mr. Tucker's
> attorney] said that he would discuss with * * * [Mr. Tucker].  I noted
> that $100 payments for Jan/Feb and $833 payment for March haven't
> been made.  [Emphasis added.]

Mr. Tucker does not contend that he made the required periodic payments after

December 2011, and we find no evidence in the record that he did.  Instead,

---

[6]Mr. Tucker alleges that the entry dated April 18, 2012, is inaccurate in stating that Appeals notified his attorney of the continued responsibility to make the required periodic payments after his original OIC was returned to Appeals from the COIC.  However, Mr. Tucker does not point to any evidence that refutes Appeals' assertion that it notified him of the continuing obligation, and we can find none in the record.

[7]The initial and periodic payments required by section 7122(c)(1)(B) are sometimes referred to as "TIPRA payments" because it was the Tax Increase Prevention and Reconciliation Act of 2005 ("TIPRA"), Pub. L. No. 109-222, sec. 509(a), 120 Stat. at 362, that amended section 7122 to require that "[t]he submission of any periodic payment offer-in-compromise shall be accompanied by the payment of the amount of the first proposed installment", sec. 7122(c)(1)(B)(i), and to provide that "[a]ny failure to make an installment (other than the first installment) due under such offer-in-compromise during the period such offer is being evaluated * * * may be treated * * * as a withdrawal of such offer-in-compromise", sec. 7122(c)(1)(B)(ii).

**[\*14]** Mr. Tucker asserts that he and an unspecified "Appeals Officer conducting the CDP proceedings agreed that the petitioner would stop making payments under the returned offer". However, Mr. Tucker offers no evidence of such an agreement. Moreover, the record reflects several instances in which Appeals explicitly notified him (or his attorney) of the opposite: that the OIC had not been formally rejected, that the OIC was still under consideration by Appeals, and that the periodic payments continued to be due while the OIC was under consideration.

<u>Notice of determination</u>

On May 16, 2012, Appeals issued to Mr. Tucker a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330", which formally rejected his OIC and determined to proceed with the proposed levy and the notice of Federal tax lien to collect his unpaid liability for 2009. The notice of determination was issued eight months after Appeals' first request for additional financial information, four months after the COIC returned the OIC to Appeals for insufficient financial information, and more than a month after Appeals' latest deadline (April 6, 2012) for Mr. Tucker to provide additional information about the value of his personal assets. In the attachment to the notice of determination, the Appeals Officer stated that she had verified that "the requirements of any applicable law, regulation or administrative procedure with respect to the proposed

[*15] levy or NFTL filing have been met", and addressed as follows the issues

Mr. Tucker raised:

**Issues raised by the taxpayer**

On Form 12153, you checked the INSTALLMENT AGREEMENT and OFFER IN COMPROMISE boxes. During the CDP hearing on September 9, 2011, POA [i.e., power of attorney] Johnson indicated the taxes may be uncollectible at this time and that an OIC may be filed in the future. I requested additional financial information be provided to substantiate the claim. On September 29, 2011 I received a completed OIC, which was forwarded to our Centralized OIC unit for consideration. Per the letter they sent you, it was being returned to Appeals for consideration because financial information they requested was not provided. I worked with you to determine if the OIC could be accepted. In a conversation with POA Johnson on April 18, 2012 I requested additional employment and asset information, and explained that the OIC had not been rejected and therefore TIPRA payments must be made. I provided an opportunity to make those payments up, however I have not received any payments nor have any payments been sent in to the IRS. The last TIPRA payment was made in December 2011.

No other issues were raised.

**Collection Alternatives Offered by the Taxpayer**

* * * You filed an Offer in Compromise. The OIC was forwarded to our Centralized Offer in Compromise Unit, who determined that you did not provide the requested financial information and they forwarded the case back to Appeals for a final decision. I reviewed the information and noted that there were no dissipated assets to consider as part of the OIC, however there were personal assets to consider. I also noted that the financial information does not show any ability to make the monthly payment outlined in the agreement; however POA Johnson indicated that payment assistance would come

[*16] from your girlfriend.  <u>You submitted a deferred payment offer which required you to make periodic payments according to a schedule you proposed.  When you did not make those payments, we reminded you of the requirement but you did not make the payments.  Under the law, your offer is withdrawn.</u>

As noted, you did not demonstrate an ability to make monthly payments toward the liability.  As such, an Installment Agreement is not appropriate at this time.

To consider an account uncollectible, you must demonstrate an inability to pay the liability.  You have shown an inability to make monthly payments, however as noted in conversation with your POA Johnson, <u>you are in possession of a NBA Championship Ring that POA Johnson vales in the $10,000 - $20,000 range.  This asset was not included on your Form 433-A</u> * * * [A]n account should not be reported as Currently not Collectible if the taxpayer has income or equity in assets, and enforced collection of the income or assets would not cause a hardship.  As a result, I am unable to consider your account uncollectible at this time.

*    *    *    *    *    *    *

**<u>Balancing of need for efficient collection with taxpayer concern that the collection action be no more intrusive than necessary</u>**

In order for a federal tax lien to have priority against competing interests, The Service must file a NFTL pursuant to IRC §6323.  The filing protects the Governments [sic] right of priority against certain third parties.  It is my judgment that the NFTL balances the efficient collection of taxes with your legitimate concern that the collection action be no more intrusive than necessary.

IRC §6330 requires the Appeals Officer to consider whether the collection action balances the need for efficient collection of the unpaid taxes with the legitimate concern that such action be no more intrusive than necessary.

[*17] Pursuant to Policy Statement 5-1, enforcement action is a necessary component of a voluntary tax system. It is my determination that the levy action, although intrusive, is now the appropriate action.

[Emphasis added.]

Proceedings in this Court

Mr. Tucker timely filed a petition in this Court on June 19, 2012, challenging the determination by Appeals. The petition alleges that Appeals erred because: (1) the COIC failed to provide an explanation as to what financial information it lacked when it returned Mr. Tucker's OIC to Appeals; (2) the Appeals Officer issued a notice of determination sustaining the lien and levy without sufficient notice to Mr. Tucker; (3) Mr. Tucker did not receive sufficient procedural opportunity to have an OIC considered during his CDP hearing; and (4) Appeals erred in failing to place Mr. Tucker in currently not collectible status because his NBA championship ring's value is speculative and the ring is an uncollectible personal item.

On October 21, 2013, the parties submitted a joint motion for leave to submit the case under Rule 122, which we granted on October 28, 2013. The Commissioner asserts that Appeals did not abuse its discretion by rejecting Mr. Tucker's OIC after determining he had stopped making the required periodic payments. In addition, the Commissioner maintains that Mr. Tucker did not

[*18] provide adequate financial information regarding the value of his NBA championship ring, information which was necessary to compute his RCP when considering his OIC. As a result, the Commissioner contends that Appeals did not abuse its discretion in rejecting his OIC and sustaining the proposed levy and notice of Federal tax lien against Mr. Tucker. We uphold these contentions for the reasons explained hereafter.

## Discussion

I.      Legal principles of collection review procedure

A.      In general

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property; and section 6323(f) authorizes the IRS to file a notice of Federal tax lien to protect the Government's interests. However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) entitled "Due Process for Collections", and those provisions must be complied with before the IRS can proceed with a levy or sustain the filing of a notice of lien: The IRS must first issue a final notice of intent to levy and/or a notice of Federal tax lien and notify the taxpayer of the right to an administrative hearing before Appeals. Secs. 6330(a) and (b)(1), 6320(a) and (b). After

[*19] receiving such a notice, the taxpayer may request an administrative hearing before Appeals. Sec. 6320(a)(3)(B), (b)(1). Administrative review is carried out by way of a hearing before Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as Mr. Tucker has done.

B.    Agency-level review

At the CDP hearing, the Appeals Officer must determine whether the proposed collection action may proceed. In the case of a notice of intent to levy, the procedures for the agency-level CDP hearing before Appeals are set forth in section 6330(c). The procedures for the agency-level hearing regarding a notice of Federal tax lien are the same as those set forth in section 6330(c) for a notice of levy. Sec. 6320(c). The Appeals Officer is required to take into consideration several things:

First, the Appeals Officer must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. Sec. 6330(c)(3)(A). The attachment to the notice of determination set forth the Appeals Officer's compliance with these requirements, and Mr. Tucker did not challenge the Appeals officer's verification in his petition (or in his response to

**[*20]** the motion for summary judgment), so verification under section 6330(c)(1) is not at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Some of Mr. Tucker's contentions pertain to collection alternatives (i.e., an OIC and an IA), which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). The tax liability that the IRS proposes to collect is the liability that Mr. Tucker self-reported on his return (plus penalties and interest); and in his requests for a CDP hearing, Mr. Tucker did not contest his underlying tax liability.

Finally, the Appeals Officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). The notice of determination issued to Mr. Tucker stated that "enforcement action is a necessary component of a

[*21] voluntary tax system. It is my determination that the levy action, although intrusive, is now the appropriate action".

### C. Tax Court review

When Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Mr. Tucker has done. When, as here, the underlying liability of the taxpayer is not at issue, the Court reviews Appeals' determination regarding the appropriateness of the collection action for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

Here we review Appeals' non-acceptance of an OIC. Section 7122(a) authorizes compromise of a taxpayer's Federal income tax liability. "'The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general.'" Gregg v. Commissioner, T.C. Memo. 2009-19 (quoting Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006)). Consequently, in reviewing this determination, we do not substitute our judgment for that of Appeals and decide whether in our opinion Mr. Tucker's OIC should have been accepted. See Woodral v. Commissioner, 112 T.C. 19, 23

[*22] (1999); Keller v. Commissioner, T.C. Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009). Instead, we review Appeals' determination for abuse of discretion.

II.     Analysis

A.     The IRS's non-acceptance of Mr. Tucker's OIC

Mr. Tucker submitted to the IRS an OIC by which he proposed to compromise his Federal income tax liability for tax year 2009 for payments totaling $30,600. As of December 8, 2011, when the IRS evaluated Mr. Tucker's offer, his outstanding balance for those years was approximately $222,345. Thus, Mr. Tucker offered to pay about 14% of what he owed. The basis for Mr. Tucker's offer was "doubt as to collectibility". That is, he proposed that the IRS should accept payment of only 14% of the liability because there was doubt whether the IRS would ever be able to collect more.

For purposes of evaluating an OIC, doubt as to collectibility exists "where the taxpayer's assets and income are less than the full amount of the liability." 26 C.F.R. sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Appeals ultimately determined to reject that OIC for two reasons--i.e., (1) that Mr. Tucker did not make the required periodic payments; and (2) that Mr. Tucker had failed to provide the necessary financial information for Appeals to determine his RCP and

[*23] consider his OIC--and we hold that neither of these determinations constituted an abuse of discretion.

### 1. Failure to make periodic payments

Mr. Tucker contends that the COIC's letter returning his OIC to Appeals amounted to a rejection of his OIC and that this rejection relieved him of any responsibility to continue making the required periodic payments, because (he says) Appeals agreed with him that he was no longer required to make those payments. The evidence does not support this contention.

Rather, Form 656 had explicitly warned Mr. Tucker: "You must continue to make these monthly payments while the IRS is considering the offer. Failure to make regular monthly payments will cause your offer to be returned." And Mr. Tucker's OIC had explicitly acknowledged that "my offer is considered pending as of that signature date and it remains pending until the IRS accepts, rejects, returns, or terminates my offer or I withdraw my offer." The IRS's letter dated January 12, 2012, informed Mr. Tucker that "[t]he decision to return your Offer [to Appeals] is a preliminary decision made by Collection personnel. Due to the fact that you have filed a request for a Collection Due Process (CDP) hearing, we are forwarding your case to Appeals. A final determination on the (OIC) will be issued by Appeals in conjunction with the CDP." (Emphasis added.)

[*24] Under the terms of the OIC, Mr. Tucker was thus obligated to continue making the payments. And under the terms of his OIC, when he failed to do so, the OIC was to be "returned" to Mr. Tucker. Consequently, Appeals did not abuse its discretion in declining to accept the OIC.

### 2. Failure to supply information

After being considered by the COIC, Mr. Tucker's OIC was returned to Appeals because the COIC had requested substantiation of his financial information, and he did not furnish all of the requested information necessary for proper evaluation of his offer. He contends that no explanation was given to him as to what financial information was required in order for Appeals to consider his OIC, and that he fully complied with Appeals' information requests--but again, the evidence does not support this contention, and the facts detailed above show otherwise.

Mr. Tucker submitted two Forms 433-A with some supporting documentation at the CDP hearing. After reviewing the financial statements with Mr. Tucker's attorney, the Appeals Officer on several occasions requested that Mr. Tucker provide additional information related to his income and assets. In particular, the Appeals Officer requested more detailed information about real property Mr. Tucker owned, his pensions and retirement accounts, his vehicles,

**[\*25]** and his personal property--including the NBA championship ring in his possession. The IRS's record does show receipt of some financial information. However, Mr. Tucker does not allege, and our record does not show, that he ever provided the requested information regarding the value of his NBA championship ring. (Rather, his counsel's last statement about that ring was simply that there was no "insurance appraised value", leaving uncorroborated his previous estimate of $10,000 to $20,000.) As a result, we must conclude that Mr. Tucker failed to provide adequate financial information to enable the Appeals Officer to determine his financial situation.

Mr. Tucker contends, however, that the value of his NBA championship ring was speculative, that it therefore should not affect his RCP, that he is otherwise "without substantial assets", and that his failure to itemize his assets was therefore immaterial. But it was Mr. Tucker's representative who volunteered that the value of the ring was $10,000 to $20,000, and Appeals can hardly be criticized for taking his statement at face value. Property of a delinquent taxpayer is not exempt from levy merely because the property's value is speculative or unspecified. Section 6334(b) requires that the officer seizing property pursuant to a levy must "appraise and set aside to the owner the amount of such property declared to be exempt." Taxpayers who disagree with the appraisal of the officer

**[\*26]** may object at the time of the seizure, at which point the IRS will enlist "three disinterested individuals" to make the valuation. Id. Nonetheless, taxpayers are expected to comply with reasonable requests by Appeals to provide "all relevant information requested * * *, including financial statements, for its consideration of the facts and issues involved in the hearing." 26 C.F.R. sec. 301.6330-1(e)(1), Proced. & Admin. Regs. Taxpayers who fail to comply with this requirement and provide the relevant information about their personal assets are not entitled to have such property exempted from levy.

Mr. Tucker's petition characterized the ring as a "personal item", perhaps implying (though without providing any legal support for the argument) that the ring is a "personal effect" exempt from levy under section 6334(a)(2). Section 6334(a) establishes a list of categories of property that are exempt from levy by the IRS. This list is exclusive, however, and not merely illustrative, sec. 6334(c); Drye v. United States, 528 U.S. 49, 56 (1999), and we see no category on the list that would include an NBA championship ring.

Assuming (without deciding) that the ring could be among Mr. Tucker's "personal effects", the value of the ring--and thus the missing financial information--would still have been essential to Appeals' consideration of Mr. Tucker's OIC. Section 6334(a)(2) exempts from levy "personal effects" only

**[*27]** to the extent that they do "not exceed $6,250 in value".  Mr. Tucker claimed $2,000 of equity in personal assets described as "VARIOUS" on his April 5, 2012, Form 433-A.  If Mr. Tucker's ring was worth only $10,000 (the low end of his attorney's estimate), and if it could be added to these personal effects, he would have had "personal effects" totaling $12,000, only $6,250 of which was exempt, leaving $5,750 of non-exempt property subject to levy (and includible in Mr. Tucker's RCP).  If the ring was worth $20,000, then $15,750 was non-exempt and includible in RCP.  Thus, Appeals was reasonable in requiring valuation information about the NBA championship ring, and Mr. Tucker did not provide such information.

Because Mr. Tucker failed to submit essential requested financial information about the value of his personal assets, he failed to provide the Appeals Officer with all of the financial information necessary to fully evaluate his ability to pay his tax liability.  For that reason, the Appeals Officer did not abuse his discretion in refusing to accept any collection alternative based on doubt as to collectibility.  See, e.g., Kansky v. Commissioner, T.C. Memo. 2007-40; Criner v. Commissioner, T.C. Memo. 2003-328.

**[\*28]**       3.       <u>Effective tax administration</u>

As an alternative to considering his OIC on the basis of doubt as to collectibility, Mr. Tucker asked Appeals to consider his OIC on the basis of a claim of "effective tax administration" ("ETA").  Regulations adopted pursuant to section 7122 set forth guidelines for evaluating offers which promote ETA.  Under 26 C.F.R. section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., ETA offers may be accepted where collection would cause economic hardship.[8]  However, Mr. Tucker's failure to provide complete financial information impaired Appeals' ability to effectively evaluate any economic hardship.  Therefore, Appeals did not abuse its discretion in rejecting Mr. Tucker's OIC on the basis of ETA.

Mr. Tucker's petition invokes ETA in asserting that "the ring is a personal item that should not be considered for potential collection under principles of 'effective tax administration'."  This issue substantially overlaps with, if it is not

---

[8]The regulation authorizes a compromise "when the Secretary determines that, although collection <u>in full</u> could be achieved, collection <u>of the full liability</u> would cause the taxpayer economic hardship".  26 C.F.R. sec. 301.7122(b)(3)(i) (emphasis added).  However, the regulation also authorizes compromise "where, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner."  26 C.F.R. sec. 301.7122(b)(3)(ii).  Therefore, for purposes of this opinion, we assume that hardship justifying an ETA compromise might be shown where collection could be achieved of the taxpayer's full RCP--though less than the full liability--but that collection <u>of the full RCP</u> would cause hardship.

**[*29]** the mere equivalent of, the issue already discussed above in part II.A.2. We cannot tell, but it is possible that Mr. Tucker also means to argue that, for the sake of ETA, the IRS should not levy on items that have "personal" or sentimental significance--a proposition for which he cites no authority and which we cannot sustain. However sincere a claim of sentimental value may be, it is, by its nature, virtually impossible to verify; and no expert could opine about (nor could any court definitively determine) the presence or absence of sentimental value in a ring, a piece of furniture, a baseball card collection, or any other asset. If such an argument succeeded, it would protect from levy an asset that has fair market value--and that would be subject to levy if held by another taxpayer--simply because of its emotional significance to its particular owner. "Effective tax administration" does not require the IRS to make tax collection contingent on such intangible variables.

### B. Closing Mr. Tucker's case

In his petition Mr. Tucker asserts that the "Appeals Officer without notice terminated the CDP proceedings through issuance of the Notice of Determination, on the basis that no valid Offer in Compromise had been submitted." The evidence does not show that the CDP proceedings were "terminated without notice". Rather, as detailed above, Mr. Tucker failed on multiple occasions across

[*30] a period of months to provide key financial information necessary for Appeals (and the COIC) to consider his OIC; specifically, Mr. Tucker failed to satisfy Appeals' repeated requests for further information regarding the NBA championship ring. Appeals does not abuse its discretion when it rejects an OIC because a taxpayer does not provide all of the necessary financial information during the CDP hearing process. See, e.g., Olsen v. United States, 414 F.3d 144, 151-154 (1st Cir. 2005); McLaine v. Commissioner, 138 T.C. 228, 243 (2012); Sullivan v. Commissioner, T.C. Memo. 2012-337. Further, Mr. Tucker ceased making the required periodic payments in January; and more than a month before his OIC was rejected and the notice of determination was issued, he was reminded that they were due. Failure to make required periodic payments during the time the OIC is being considered may be treated as a withdrawal of the offer. Sec. 7122(c)(1)(B)(ii). We find no defects in the CDP hearing process or the issuance of the notice of determination.

We can find no issue raised by Mr. Tucker that was not considered and addressed by the Appeals Officer. Appeals did not abuse its discretion in closing Mr. Tucker's CDP hearing and issuing him a notice of determination.

[*31]                                                Conclusion

The IRS's Office of Appeals did not abuse its discretion in denying

Mr. Tucker's OIC and sustaining the notice of Federal tax lien and proposed levy

to collect his unpaid income tax for 2009.  As a result

                                    Decision will be entered for

                                    respondent.